MOHRHUSEN, Individually and as personal representative of the Estate of Alfred Mohrhusen, Appellant, v. McCANN, District Attorney and another, Respondents.

*No. 322. Argued February 5, 1974.—Decided March 5, 1974.*
(Also reported in 215 N. W. 2d 560.)

For the appellant there were briefs and oral argument by *Burton A. Strnad* of Milwaukee.

For the respondents the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. A single issue is involved on this appeal: Did the trial court err in dismissing the plaintiff's petition for a writ of prohibition to restrain the district

attorney and the medical examiner of Milwaukee county from conducting an inquest into the death of Alfred J. Mohrhusen?

*Was prohibition the proper remedy and did plaintiff meet the requirements for issuance of the writ?* The writ of prohibition is commonly defined as one to prevent a judicial or quasi-judicial tribunal from exercising jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance.[1] We conclude that an inquest is a quasi-judicial proceeding against which a writ of prohibition may properly lie. Recently this court enlarged the scope and use of the writ of prohibition to include nonjurisdictional error.[2] However, this court also recently re-emphasized that the writ of prohibition is an extraordinary remedy and that it will be issued only in cases where (1) there is no effective remedy and (2) extraordinary hardship is shown. In *State ex rel. Jefferson v. Roraff* [3] this court said that the burden is on the petitioner seeking the writ to allege sufficient facts to meet this twofold prerequisite to the issuance of a writ. In the *Roraff Case* the court concluded that mere inclusion in the petition of a general conclusory statement that there is no adequate remedy and that grave hardship will result if the writ does not issue will not suffice. Facts must be alleged in support of such conclusions. In some cases the harm could be inherent in the situation. This is not such a case.

Here, the petition is similar to the one held to be inadequate in the *Roraff Case*. The affidavit of Stella Mohrhusen in support of her petition concludes with the following paragraphs:

---

[1] 63 Am. Jur. 2d, *Prohibition*, pp. 227, 228, sec. 2.

[2] *State ex rel. Freemon v. Cannon* (1968), 40 Wis. 2d 489, 162 N. W. 2d 32.

[3] (1969), 44 Wis. 2d 250, 170 N. W. 2d 691.

"That the District Attorney and Medical Examiner will knowing the premises, yet contriving, as affiant believes, unjustly and unlawfully to oppose affiant and against the laws and customs of this State, and contrary to all conception of justice and fair play, and to her manifest damage, prejudice and grievance, the District Attorney and Medical Examiner's Office refused to and still do refuse to dismiss the inquest.

"That there is no adequate remedy at law, and irreparable harm will be done to affiant unless the District Attorney and Medical Examiner are restrained and prohibited from proceeding with the inquest."

As in *Roraff,* the briefs and oral arguments on appeal were directed to the merits of the petitioner's claims and not to the prerequisites to the issuance of the writ. Nor do the transcripts of the two hearings before the dismissal of the petition and the alternative writ reveal any presentation of facts to show the type of harm which would flow if the writ of prohibition did not issue. The type of harm the petitioner contemplates appears in the affidavit of the petitioner where she states:

"That petitioner is informed and believes that because of the circumstances it is impossible for the petitioner and the members of her family to have a fair and impartial hearing and that said hearing will infringe upon their right of privacy."

In *State ex rel. Schulter v. Roraff* [4] the petitioner sought a writ of prohibition to prevent further proceedings in a criminal case against him. The petitioner alleged that an inquest which resulted in charges against him was so unfair and raised such prejudicial publicity that it effectively denied him a chance to receive a fair trial. This court stated that if the petitioner were correct in his contentions he should not be put to a trial and that prohibition would be proper. However, this court found that the pretrial publicity was not so outrageous that it necessitated the ending of the criminal proceedings.

[4] (1968), 39 Wis. 2d 342, 159 N. W. 2d 25.

In this case the petitioner has not demonstrated that the inquest will not be fair and impartial. The inquest will be conducted by the medical examiner's office and the petitioner has not shown that the medical examiner will not conduct a fair and impartial proceeding. This court has already stated that an inquest is not per se unconstitutional.[5] The petitioner appears to raise this issue in her affidavit where she states:

". . . That there are no rules promulgated for the holding of an inquest, nor is there any superintending body or court regularly appointed to control the procedure. That petitioner believes the procedure violates her rights to due process and infringes on her right of privacy and other privileges provided by the Constitution of the United States, State of Wisconsin, and certain privileges granted to witnesses by the State of Wisconsin."

In the *Schulter Case* we rejected a broadside constitutional attack on the inquest procedure. The inquest is mainly an investigative tool; witnesses at such an inquest are entitled to due process and the manner of the conducting of the inquest may give rise to legitimate constitutional complaints. In the present case, however, claims of violation of due process are speculative. The record reveals no reason to believe that violation of the petitioner's constitutional rights is so clear and imminent that the inquest should be restrained before it is commenced.

The petitioner referred several times to her right to privacy. Although the respondents are correct in stating that this state does not recognize a cause of action for invasion of privacy,[6] some recognition of rights to privacy is implicit in many constitutional protections afforded the

---

[5] *Id.* at page 351.

[6] *Judevine v. Benzies-Montanye Fuel & Warehouse Co.* (1936), 222 Wis. 512, 269 N. W. 295; *State ex rel. Distenfeld v. Neelen* (1949), 255 Wis. 214, 38 N. W. 2d 703; *Yoeckel v. Samonig* (1956), 272 Wis. 430, 75 N. W. 2d 925; *Meier v. Meurer* (1959), 8 Wis. 2d 24, 98 N. W. 2d 411.

individual. However, any right to privacy of an individual witness at an inquest would be outweighed by the public interest in the investigation of possible criminal actions. While an individual may perhaps claim certain constitutional and statutory privileges when being questioned by authorities investigating possible criminal activity, he cannot refuse to cooperate because his privacy is being invaded by the questions put to him.

It is clear, as in *State ex rel. Jefferson v. Roraff*, that the petition in the present case does not demonstrate that extraordinary hardships will result if the writ does not issue and that, therefore, the petition and alternative writ were properly dismissed. Since we have determined that the requisite showing of extraordinary hardship has not been made, we do not reach the question of whether there exist other adequate remedies which would make the writ of prohibition unavailable.

*Did the trial court err in dismissing the writ in spite of the petitioner's statutory objections to the district attorney's order?* We agree with the trial court's decision, based on *State ex rel. Kurkierewicz v. Cannon,*[7] that the trial court "lacked jurisdiction to interfere with the functions of the district attorney in ordering an inquest." Implicit in the trial court's decision is a rejection of the contention of the petitioner that the district attorney does not have the statutory power to order the medical examiner to hold an inquest.

In *Kurkierewicz* we stated:

"Our statute [sec. 966.01, Stats. 1967, now sec. 979.01] is an unusual one. The briefs cite no other state which confers authority upon the district attorney to compel the coroner or medical examiner to commence an inquest. Milwaukee is the only county of the state that employs a full-time medical examiner, who has the authority and duty of coroners in other counties."[8]

---

[7] (1969), 42 Wis. 2d 368, 166 N. W. 2d 255.

[8] *Id.* at page 383.

Thus this court clearly held in *Kurkierewicz* that the district attorney of Milwaukee county has the same power to order inquests as the other district attorneys in Wisconsin.

Sec. 979.15, Stats., vests "exclusive jurisdiction and power to take inquests" in the medical examiner in counties of over 500,000 population.[9] However, the power to *take* inquests is not the same as the power to *order* them. Sec. 979.01, which directs the district attorney to order inquests under certain circumstances makes clear that "taking" an inquest means to conduct an inquest.

Sec. 979.01, Stats., ends with these sentences:

". . . In any inquest *ordered* by the district attorney he shall appear in the inquest representing the state in presenting the evidence. For the purpose of *taking* the inquest, deputy coroners may perform all the duties and exercise all the jurisdiction and powers conferred upon coroners by this chapter and shall be entitled to the same fees as the coroner for the performance of like duties. Nothing herein contained shall be construed as preventing such coroner from holding an inquest under the circumstances hereinabove specified without being first notified by the district attorney to hold such inquest. Such inquest may be held in any county, if within this state, in which there would be venue for the trial of the offense." (Emphasis supplied.)

A complete reading of sec. 979.15, Stats., also reveals that the duties referred to which are *all* to be performed by the medical examiner are those related to the conducting of inquests. The section ends by indicating that an

---

[9] "979.15 **Inquests; counties over 500,000.** In each and every county whose inhabitants exceed in number 500,000 all the duties mentioned in the foregoing sections of this chapter shall be performed by the medical examiner appointed pursuant to s. 59.34 (1), who is hereby invested with the exclusive jurisdiction and power to take inquests therein, and in case of the inability of the medical examiner to attend to such duties the medical examiner may deputize one of his assistants to conduct the inquest."

assistant medical examiner may "attend to such duties" and "conduct the inquest" when the medical examiner is unable to do so himself. Thus it is clear that "such duties" refer to "taking" and "conducting" inquests.

Sec. 59.34, Stats.,[10] which created the office of medical examiner, states that the duty of the coroner to "[t]ake inquest of the dead when required by law" is to be performed in counties having a population of 500,000 or more by the office of the medical examiner. The duty of the coroner to take inquests when required by law includes the duty to take them when ordered by the district attorney under sec. 979.01, Stats.

If, as the petitioner contends, the absence of the words "medical examiner" from sec. 979.01, Stats., means that the district attorney can only order coroners to hold inquests, that statute would also prevent medical examiners from holding inquests at their own instance. For sec. 979.01 only states that coroners may hold inquests despite the lack of an order from the district attorney. The logic of the petitioner would leave Milwaukee county without inquests instituted by anyone. Yet the statutes clearly indicate that such inquests will be taken by the medical examiner.

*Should the trial court have ordered the district attorney to make a return to the alternative writ?* The trial court granted the district attorney's motion to dismiss the petition for a writ of mandamus because it felt that *Kurkierewicz* indicated that the discretion of the district attorney in ordering or not ordering an inquest was not to be looked into by the courts. In *Kurkierewicz* the petitioner was seeking a writ of mandamus to direct the district attorney to order an inquest. This court held that

---

[10] "59.34 **Coroner; medical examiner; duties.** The coroner shall: "(1) Take inquest of the dead when required by law, except that in counties having a population of 500,000 or more such duty and the powers incident thereto shall be vested exclusively in the office of the medical examiner hereby created. . . ."

sec. 979.01, Stats., vested discretion in the district attorney to order an inquest. And the conclusion as to whether an inquest is necessary is to be the subjective inference of the district attorney. In *Kurkierewicz* the motion to dismiss the petition for writ of mandamus was accompanied by the affidavit of a deputy district attorney outlining the investigation and the conclusions of the district attorney. The court felt this affidavit "served the function of a return for it 'showed cause' why the district attorney exercised his discretion not to order an inquest." This court said: "It sufficiently states the position of the district attorney and the factual posture of the case to show that discretion was in fact exercised and hence permits the appellant to prevail on the merits." [11]

Thus it appeared to the trial court in the present case that as long as discretion has been exercised the court will not second guess the district attorney. This is probably true. However, a decision should not be confused with the exercise of discretion. It is clear that in the present case the district attorney had made the decision to order an inquest. However, the district attorney did not respond to the petition as in *Kurkierewicz* with an affidavit explaining the district attorney's exercise of discretion. *Kurkierewicz*, at an earlier point, said: "This, of course, is not to say that his discretion may rest upon prejudice or caprice." Thus, the petitioner in this case feels that the district attorney should have been required to show the reasons for his exercise of discretion before the petition was dismissed.

The district attorney enjoys a presumption that his discretion has been properly exercised. In *State ex rel. Niedziejko v. Coffey* [12] this court held that a magistrate

[11] *State ex rel. Kurkierewicz v. Cannon, supra,* footnote 7, at page 385.

[12] (1964), 22 Wis. 2d 392, 126 N. W. 2d 96, 127 N. W. 2d 14.

conducting a John Doe proceeding was entitled to a presumption that he had not abused his discretion as to duration and scope of the proceeding. The court said that the presumption could be overcome only by specific allegations and found that the allegations in the case were too indefinite and uncertain to constitute a basis for a writ and the quashing of the writ was affirmed.

The petitioner here may be correct in asserting that she did allege specifically that the decision of the district attorney was "arbitrary and capricious" and that it was made to investigate the death of someone other than the petitioner's husband. This sufficiently called into question the propriety of the decision. The district attorney would simply have had to submit an affidavit indicating why he felt the circumstances surrounding the death of Alfred Mohrhusen seemed to him to be suspicious.

However, the district attorney was not the only person named in the petition. The medical examiner did make a return to the alternative writ in which he denied the allegations and put into issue the allegations of the petition. At the hearing held by the trial court the petitioner's attorney examined Warren B. Hill, the assistant deputy medical examiner. This witness established most of the "facts" alleged by the petitioner. For instance, he testified that all the witnesses had been cooperative with the medical examiner's office; that Alex Dobbish, a reporter, indicated he would see the district attorney when he discovered an inquest would not be held by the medical examiner; that John Kelly, Jr., had also indicated he had been to see the district attorney; that the district attorney ordered that a notice of the time of the inquest be sent to John Kelly, Jr., that the medical examiner had already signed a death certificate. None of these facts rebuts the presumption of the proper exercise of discretion by the district attorney.

The district attorney is supposed to order an inquest when he believes one is necessary. The fact that other persons do not believe that one is necessary (including the medical examiner) is not proof that he could not honestly reach an opposite conclusion.

The assistant medical examiner also testified that he called the district attorney to inquire why he thought an inquest was necessary. The witness stated:

". . . his [the district attorney's] reply was to the effect that I—that's myself—being aware of the circumstances surrounding the death of a Mr. Kelly, should know why the inquest was being called. He made some reference to Mrs. Hayes and asked me why Mrs. Hayes was living at the Mohrhusen home, and I indicated it wasn't indicated in the report and he said, well, this is one of the reasons he wanted to conduct an inquest, and conversation regarding the fact that Mrs. Hayes was married to a person who was employed at the Kelly-Mohrhusen firm at the time of Mr. Kelly's death. He really didn't state specifically what he was looking for, however, and I didn't question him any further. I thought we'd just conduct the inquest as ordered.

"*Q.* Did he state or indicate to you that he wanted to question Carol Patricia Mohrhusen—Hayes nee Mohrhusen in regards to matters concerning Mr. Kelly's death?

"*A.* No, he didn't specifically state this, but I—it was implied more or less that he would."

This is the "evidence" which the petitioner appears to rely on to show that the district attorney is calling an inquest to investigate the death of someone other than the decedent supposedly involved. However, the response of the district attorney is equivocal. It is the assistant medical examiner's subjective interpretation of what the district attorney meant that is relied on by the petitioner. The remark of the district attorney must be judged by the trier of fact. The remark is not sufficient to overcome the presumption that the district attorney has not abused his discretion. The remark may indicate merely that the death of John Kelly and the relationship of the decedent's

family with the Kelly-Mohrhusen firm made the district attorney more suspicious of the circumstances surrounding the subsequent death of Alfred Mohrhusen. We do not think this remark is sufficient to establish that the district attorney ordered the inquest to probe further into the death of John Kelly.

*By the Court.*—Order affirmed.