STATE EX REL. DEPARTMENT OF PUBLIC INSTRUCTION, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS (Equal Rights Division), Respondent.*

*No. 796. Argued May 7, 1975.—Decided June 3, 1975.*
(Also reported in 229 N. W. 2d 591.)

---

* Motion for rehearing denied, without costs, on September 8, 1975.

For the appellant there were briefs by *William J. Calvano* and *Prosser, Wiedabach, Lane & Quale, S. C.,* attorneys, all of Milwaukee, and *Rocke A. Calvelli* of counsel, and oral argument by *Mr. Calvelli.*

For the respondent the cause was argued by *Gordon Samuelsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, J. There are two issues to be determined:

(1) Under the Fair Employment Act does DILHR have jurisdiction to hear and determine complaints charging other state agencies with unlawful discrimination?

(2) Assuming DILHR did not have such jurisdiction, did the circuit court abuse its discretion in quashing the writ?

On September 17, 1973, Kathleen Wagner Micke, a data processor, made a written complaint of sex discrimination as to conditions of employment against her employer, DPI, and subsequently filed it with the Equal Rights Division of DILHR.

On or about October 24, 1974, DPI was served with a "Notice of Hearing" from DILHR, identifying Ms. Micke as a complainant, and advising that on November 13, 1974, pursuant to sec. 111.36 (3) (a), Stats., a hearing would be conducted inquiring into DPI's: (1) "Patterns of discrimination against women in regard to wages and conditions of employment. . . ;" (2) "Differential treatment of complainant . . . because of her sex with regard to wages and conditions of employment;" and (3) "Harassment of Complainant. . . in retaliation for Complainant's charging Respondent [DPI] with violating Sections 111.31–111.37, of the Wisconsin Statutes." In response, DPI moved DILHR to dismiss the proceeding for lack of jurisdiction.

On October 31, 1974, DPI obtained an alternative writ of prohibition in the circuit court for Dane county commanding DILHR to desist and refrain from any further proceeding in the matter pending a hearing on the question of whether the writ should be made absolute. Pursuant to a motion by DILHR, the circuit court, on December 31, 1974, quashed the alternative writ.

The declaration of policy of the Fair Employment Act, as set forth in sec. 111.31, Stats., is broad in its scope and is clearly intended to prohibit discrimination in employment, working conditions and promotional opportunities by reason of age, race, creed, color, handicap, sex, national

origin and ancestry. It also provides that the act is to be liberally construed to effectuate its purposes. DILHR is authorized and directed to administer the act and its orders are subject to judicial review under ch. 227.

Sec. 111.32 (5) (g) 1, Stats., provides in part that it is discrimination for an employer, labor organization, licensing agency or person to refuse to hire or employ or terminate from employment an individual because of sex. It is also unlawful to discriminate against an individual in promotion or compensation or in terms, conditions or privileges of employment because of sex. The statute further provides it is unlawful for any employer to discharge or otherwise discriminate against a person because he has opposed any discriminatory practices or has made a complaint under the terms of the act.

On their face, these statutes seem broad enough to apply to state employers as well as to private employers. DILHR contends the specific exemption in sec. 111.32 (5) (e), Stats., to the occupations of law enforcement and fire fighting indicate that the legislature contemplated the inclusion within the act of governmental employees.

With respect to the reference to "law enforcement or fire fighting" in the Fair Employment Act, DPI points out that such inclusion by no means compels the conclusion that government employees are covered by the act, but rather indicates a legislative recognition that many police and firemen are represented by labor unions which are expressly included within the act. Sec. 111.32, Stats.

DPI asserts that absent explicit language in the act making it applicable to the state and its agencies, the strictures of the act are not enforceable against them. The basis for this assertion is a line of Wisconsin cases typified by *State ex rel. Martin v. Reis* (1939), 230 Wis. 683, 284 N. W. 580, where the issue was stated to be, "Does a regulatory statute of general application

apply to the sovereign, the state itself?" The court stated at page 687:

"It is quite evident that the legislature has used the term 'employer' in several different senses. Where it was the legislative intent that the term 'employer' should include the state or any of its political subdivisions, it is explicitly so stated in the definition.

"This raises for consideration the question whether a statute of general application containing no specific provision to the effect that the state is within it, applies to the state itself. It is universally held, both in this country and in England, that such statutes do not apply to the state unless the state is explicitly included by appropriate language. . . ."

*See also: e.g., Kenosha v. State* (1967), 35 Wis. 2d 317, 323, 151 N. W. 2d 36; *Konrad v. State* (1958), 4 Wis. 2d 532, 538, 539, 91 N. W. 2d 203; *Door County v. Plumbers Local 298* (1958), 4 Wis. 2d 142, 150, 89 N. W. 2d 920; *Sehlin v. State* (1950), 256 Wis. 495, 500, 41 N. W. 2d 596; *Necedah Mfg. Corp. v. Juneau County* (1932), 206 Wis. 316, 322, 237 N. W. 277, 240 N. W. 405; 62 Op. Atty. Gen. (1973), 47.

It should be noted that *Door County, supra,* was reversed by the United States Supreme Court in *Plumbers' Union v. Door County* (1959), 359 U. S. 354, 359, 79 Sup. Ct. 844, 3 L. Ed. 2d 872, where the court stated:

"Respondents attempt to distinguish the case by claiming that a political subdivision must be expressly included in a statute if it is to be considered within the law's coverage . . . . But this Court has many times held that government bodies not expressly included in a federal statute may, nevertheless, be subject to the law. . . ."

However, the court was applying a federal law, the National Labor Relations Act, and its construction is not binding on this court's construction of Wisconsin laws. This court has adhered to the explicit inclusion rule in a

case decided subsequent to the United States Supreme Court's decision in *Plumbers' Union, supra*. *See: Kenosha v. State, supra.*

In other major employment statutes the legislature took care to specifically enact language expressly bringing the state within coverage. Sec. 101.01 (2) (c), Stats., relating *inter alia,* to the safe-place statute providing, "The term 'employer' shall mean and include every . . . state, county, town, city, village . . . ." Sec. 102.04 (1) (a), relating to workmen's compensation, includes within the definition of "employer:" "The state, each county, city, town, village . . . ." Sec. 108.02 (4) (a), relating to unemployment compensation, defines "employer" to include every "government unit" with a population of not over 5,000. Sec. 108.02 (28) defines "government unit" to include ". . . this state, any school district, county, city, village, town . . . and any agency of any of the foregoing."

DPI further contends the existence of a separate statutory scheme for dealing with employment discrimination by the state and its agencies indicates that the legislature did not intend the state to be covered by the Fair Employment Act. This scheme is contained in ch. 16, subch. II of the Wisconsin statutes, entitled "Civil Service," to be administered by the bureau of personnel. The Civil Service Act does provide that there shall be no discrimination because of sex by any officer, board, department, state agency or institution in the recruitment, application, examination or hiring process. However, while the terms of the Civil Service Act as it applies to state employees are compatible, they are not as extensive as the Fair Employment Act and do not cover all the acts of discrimination complained of.

As DILHR points out, however, the Fair Employment Act declares that it is unlawful sex discrimination for:

". . . an employer, labor organization, licensing agency or person to refuse to hire, employ, admit or license, or

to bar or to terminate from employment or licensing such individual, or to discriminate against such individual in promotion, compensation or in terms, conditions or privileges of employment or licensing." Sec. 111.32 (5) (g) 1, Stats.

DILHR contends "person" should be construed to include the state and cites sec. 990.01 (26), Stats., which provides:

**"Construction of laws; words and phrases.** In the construction of Wisconsin laws the words and phrases which follow shall be construed as indicated unless such construction would produce a result inconsistent with the manifest intent of the legislature:

"...

"(26) PERSON. 'Person' includes all partnerships, associations and bodies politic and corporate."

The state is a body politic but it is not corporate, nor are state agencies corporate. The statutory phrase "bodies politic and corporate" is conjunctive and the state and its agencies are not within this definition of "person."

DILHR also contends that the rule requiring explicit inclusion to subject the state to a general statute is derived from the presumption that ". . . the legislature does not intend to deprive the crown of any prerogatives, rights, or property unless it expresses its intention to do so in explicit terms . . . ." *State v. Milwaukee* (1911), 145 Wis. 131, 135, 129 N. W. 1101. Several United States Supreme Court decisions are cited by DILHR which allow general federal statutes to be applied against the government. *United States v. California* (1936), 297 U. S. 175, 56 Sup. Ct. 421, 80 L. Ed. 567; *Fox Film Corp. v. Doyal* (1932), 286 U. S. 123, 52 Sup. Ct. 546, 76 L. Ed. 1010. However, as noted above, federal rules of construction for federal statutes are not binding on this court's construction of state statutes.

We agree with the conclusion reached by the circuit court that the state and state agencies are not included within the terms of the Fair Employment Act and that

DILHR has no jurisdiction over the employment practices of DPI.

We do, however, urgently suggest that the legislature reconsider the problem. The state is the largest single employer within the state. The legislative purpose or public policy as set forth in the Fair Employment Act should apply to all employees whether hired by the state or others. If the legislature does not include them, questions of constitutional equal protection could be raised. A simple amendment to the act could include the state and its agencies as an employer or person so that all employees (with stated exceptions) may enjoy the protection of our antidiscrimination statutes.

The circuit court did conclude, as we do, that the Fair Employment Act did not give DILHR jurisdiction over DPI. Nevertheless, the circuit court quashed the petition for the writ of prohibition because of the availability of a judicial review under the administrative review provisions of ch. 227, Stats., and because prohibition was "more drastic a remedy than the instant situation demanded."

The writ of prohibition is an extraordinary remedy which traditionally "would not be issued when there is an adequate remedy by appeal or otherwise." *Drugsvold v. Small Claims Court* (1961), 13 Wis. 2d 228, 231, 232, 108 N. W. 2d 648.

In *State ex rel. Thompson v. Nash* (1965), 27 Wis. 2d 183, 193, 194, 133 N. W. 2d 769, the appellant claimed the lower court had erred in prohibiting him from conducting a discovery examination of an employee of the Wisconsin department of taxation prior to a hearing before the board of tax appeals on an assessment made against appellant by the department. This court pointed out that by virtue of art. VII, sec. 8 of the Wisconsin Constitution, "Any tribunal acting in a quasi-judicial capacity" is subject to the supervisory control and juris-

diction of the circuit court. However, the court pointed out at page 194:

"This court has never interpreted sec. 8, art. VII, Wisconsin constitution, as authorizing the circuit courts to interfere with the orderly operating procedures of an administrative agency in the absence of a showing of a denial of due process. . . . The legislature has now prescribed a comprehensive review procedure with respect to most state administrative-agency determinations, including those of the instant board, by enacting the Wisconsin Administrative Procedure Act (ch. 227, Stats.). Because of the scope of review granted by sec. 227.20 (1), any denial of due process can in most instances be adequately remedied thereunder. Even where an administrative agency is acting in a quasi-judicial capacity, the circuit court should not exercise its supervisory control under sec. 8, art. VII, independently of ch. 227, except where there has been a substantial showing of denial of due process which cannot later be adequately remedied by review under ch. 227.

"While appellant has made a showing that makes a strong appeal to our sense of fair play, this showing falls far short of establishing a denial of due process. In fact, appellant does not contend that there has been a denial of due process. Therefore, the circuit court did not err in not permitting a return to be made to the alternative writ upon denial of the motion to quash. . . ."

In *State ex rel. Jefferson v. Roraff* (1969), 44 Wis. 2d 250, 255, 256, 170 N. W. 2d 691, where the defendant claimed the lower court was without jurisdiction because of a defective criminal complaint, this court re-emphasized the unusual circumstances which must be present before the writ will issue:

"The defendant relies upon the language of the recently decided case of *State ex rel. Schulter v. Roraff* (1968), 39 Wis. 2d 342, 348, 159 N. W. 2d 25, where we said:

" 'We think the writ of prohibition was a proper remedy to test the jurisdiction of the judge of the county court as a magistrate to hold a preliminary examination on the alleged felony.'

"This is a correct, but only a partial, recitation of the law. It merely means that the extraordinary remedy of prohibition, if *properly* invoked, will reach the error claimed. The more crucial question, and one that must be subjectively decided in each case, is whether under the circumstances a court's extraordinary supervisory powers *ought* to be invoked to reach the error.

"There is apparently the misconception that we have declared prohibition to be an available remedy in all cases where it would be an effective remedy. This is an incorrect view of the posture of the law.

". . .

"A court will exercise its supervisory jurisdiction over an inferior court by a writ of prohibition only in those cases where an appeal is unavailable or ineffective and extraordinary hardship is shown."

The court also pointed out, at page 258, that the burden is on the petitioner seeking issuance of the writ "to allege sufficient facts to demonstrate the absence or complete inadequacy of appeal and that extraordinary hardship will result if the writ does not issue." A "general conclusionary statement that the remedy by appeal is inadequate and that the petitioner will suffer grave hardship" if the proceeding continues will not suffice. This court, in *Mohrhusen v. McCann* (1974), 62 Wis. 2d 509, 512, 215 N. W. 2d 560, reiterated that view but noted, "In some cases the harm could be inherent in the situation."

On review by this court, the question is whether the lower court abused its discretion in quashing the writ, *State ex rel. Beaudry v. Panosian* (1967), 35 Wis. 2d 418, 426, 151 N. W. 2d 48, or whether the trial court's ruling was based upon an "erroneous view of the law." *State ex rel. Schulter v. Roraff* (1968), 39 Wis. 2d 342, 349, 350, 159 N. W. 2d 25. In this case, the circuit court did conclude DILHR had no jurisdiction over DPI and therefore its order was not based upon an erroneous view of the law.

The question then becomes whether the lower court abused its discretion in quashing the writ.

The petition for the writ urges that if DILHR is allowed to proceed,

". . . petitioner will be deprived of due process of law and will suffer great and irreparable damage in that it will be required to appear and otherwise defend all claims and charges of discriminatory employment practices before a tribunal having no jurisdictional or procedural grounds to hear and/or decide such matters."

The remedy available for judicial review provided by sec. 227.20 (1) (b), Stats., is as follows:

"**Scope of review.** (1) . . . The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decisions being:

". . .

"(b) In excess of the statutory authority or jurisdiction of the agency, or affected by other error of law."

Thus it is clear that judicial review is available. However, such review is not available until after a complete proceeding on the merits. It is our opinion that DILHR was without jurisdiction in the first instance and hence is exceeding its legislatively prescribed authority. A remedy by review after the entire proceeding has been conducted is grossly inadequate, and the harm is "inherent in the situation." *Mohrhusen, supra.* Therefore we conclude the lower court did abuse its discretion in quashing the application for the writ.

*By the Court.*—Order reversed with directions to make the writ absolute.