Connie J. MOTOLA, Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION and City of New Berlin, Respondents-Respondents,

Supreme Court

No. 97–0896. *Oral argument May 5, 1998.—Decided June 30, 1998.*

(On certification from the court of appeals.)

(Also reported in 580 N.W.2d 297.)

589

For the petitioner-appellant there were briefs (in the Court of Appeals) by *Bruce F. Ehlke, Aaron N. Halstead* and *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer*, Madison and oral argument by *Aaron N. Halstead*.

For the respondent-respondent, LIRC, the cause was argued by *David C. Rice*, assistant attorney general, with whom on the brief (in the Court of Appeals) was *James E. Doyle*, attorney general.

For the respondent-respondent, City of New Berlin, there was a brief (in the Court of Appeals) by *Elizabeth A. McDuffie, Brent P. Bendrud* and *Krukowski & Costello, S.C.*, Milwaukee, and oral argument by *Elizabeth McDuffie*.

Amicus curiae was filed (in the Court of Appeals) by *James W. Conway*, city attorney and *Susan M. Love* and *Davis & Kuelthau*, Milwaukee for the City of Kenosha.

¶ 1. JANINE P. GESKE, J. The court of appeals certified two questions to this court: (1) Under *Braatz v. LIRC*, 174 Wis. 2d 286, 496 N.W.2d 597 (1993), may any employer limit its married employees to coverage under one health insurance policy? (2) When bringing an action under the Wisconsin Fair Employment Act, Wis. Stat. §§ 111.31–111.395 (1993–94),[1] must a complainant show actual harm?

¶ 2. In this case, employees of a municipality each were enrolled in "single" person coverage through

---

[1] All future statutory references will be to the 1993–94 volume, unless otherwise indicated.

their employer's health insurance plan. Following their marriage, the municipal employees continued to carry their separate single coverages until they requested family coverage shortly before the birth of their child. The municipal employer responded by enrolling the husband under family coverage and including his wife as a dependent. From that point on, the wife no longer was an enrollee with her own coverage but was covered only as her husband's dependent.

¶ 3. We conclude that a public employer, as defined in Wis. Stat. ch. 40, and the regulations thereto, may limit its married co-employees to coverage under one family health insurance policy because of their marital status, and therefore, the nonduplication policy of the City of New Berlin (the City) does not violate the marital status discrimination clause of the Wisconsin Fair Employment Act (WFEA).[2] Because there is no violation of the WFEA, we need not reach the second certified question regarding actual harm.

---

[2] To the extent that the Wisconsin Fair Employment Act, Wis. Stat. §§ 111.31 through 111.39, can be interpreted as limiting the rights of private sector employers to manage their employee health insurance plans, we recognize that application of the WFEA, in some circumstances, may be subject to preemption by the Federal Employee Retirement Income Security Act of 1974, as amended (ERISA), 29 U.S.C. §§ 1001, et seq. *See Shaw v. Delta Air Lines*, 463 U.S. 85 (1983). Our conclusion in this case is limited to finding an implied exception to the WFEA for public employers who impose a nonduplication policy on their married co-employees. We expressly limit our decision to governmental employers and thus, this case is not governed by ERISA

## FACTS AND PROCEDURAL HISTORY

■

¶ 4. We recite the facts as found by the Labor and Industry Review Commission (LIRC). We will uphold LIRC's factual findings if they are supported by substantial evidence. *See* Wis. Stat. § 227.57(6). In this case, the parties do not dispute the pertinent facts as found by LIRC.

¶ 5. Ms. Connie J. Motola began employment with the City in 1977, as a dispatcher in the City Police Department. Ms. Motola remains employed in that position. When Ms. Motola began her City employment, she was unmarried. At that time she was provided health insurance coverage under the City's group health insurance policy. Ms. Motola was enrolled for single coverage which extended only to her own medical needs.

¶ 6. In 1980, Ms. Motola married Richard Motola, another City employee. At that time Richard Motola carried single coverage health insurance under the City's group health policy for his own medical needs. After their marriage, the Motolas continued to maintain their individual health insurance plans. Prior to the birth of their child in 1984, the Motolas requested family health insurance coverage.

¶ 7. In response to this request, the City changed Richard's enrollment status to family coverage, providing coverage for Richard Motola and his legal dependents, including his spouse, Connie Motola, and their child(ren). Ms. Motola's status was changed from that of a single coverage enrollee to coverage as a dependent under the family coverage enrollment of

Richard Motola.[3] The City's policy of offering only one enrollment for family coverage where both spouses are employed by the municipality is described by the parties as a "nonduplication policy."

¶ 8. The City has been a party to a collective bargaining agreement with the New Berlin Public Employees Union, Local 2676, governing the terms and conditions of employment of certain City employees since at least 1984. Since the 1985–86 collective bargaining agreement became effective, the agreement has provided:

> The City shall provide the standard health insurance program. . .for all employees, except regular part-time employees, and shall pay the full premium cost of the single plan for single employees and the family plan for employees with dependents. *. . . In the event an employee has a spouse that is also a City employee, that employee and the employee's spouse will be entitled to only one family health insurance contract between them from the City.* (Emphasis added.)[4]

---

[3] According to Ms. Motola's testimony at the ERD hearing, the City responded to the Motolas' request for family coverage by canceling her single coverage enrollment. Since July, 1984, Ms. Motola has been a dependent under her husband's health insurance policy. The City disputes Ms. Motola's use of the term "cancel," contending that the City merely switched Ms. Motola's coverage from a single plan to a family plan. We do not regard this as a material factual dispute.

[4] City of New Berlin Civil Service Ordinance sec. 4.25(1) similarly states, "If an employee has a spouse that [sic] is also a City employee, that employee and the employee's spouse will be entitled to only one family health insurance contract between them from the City." Ms. Motola asked LIRC to take administrative notice of this ordinance.

Based on evidence referring to the italicized portion of the above provision as the "Motola clause," LIRC inferred that this provision of the collective bargaining agreement was negotiated around the time of the birth of the Motolas' child to specifically address their request for family coverage.

¶ 9. LIRC found that in applying the "Motola clause," the City has allowed married couples who are both City employees to elect which one of them will be designated as the enrollee for the family coverage under the group health insurance plan. This election also determines which one of them will be covered under the group health insurance plan only as a dependent of the enrollee spouse.

¶ 10. On occasion since the mid–1980's, the City has offered its employees the option of selecting health coverage under one of two or more different insurance plans. At those times, application of the "Motola clause," or the nonduplication policy, would have the effect of precluding two employees who were married to one another from each having family coverage for their own medical needs under different plans.

¶ 11. Currently, the City provides its employees only one health insurance plan through a group insurance policy between the City and Prime Care Health Plan, Inc. That policy provides health benefits to enrollees and to their dependents. "Dependent" is defined as an enrollee's legal spouse and unmarried dependent children. So long as his or her legal marital status continues, the rights of the spouse of an enrollee to health insurance benefits under the plan are no different from the rights of the enrollee spouse to health insurance benefits under the plan.

¶ 12. LIRC also found, however, that if the legal marital status of married employees changes, then

594

effective with the end of the month in which that change takes place, the rights under the plan of a person who had been the spouse of an enrollee differ to some extent from the rights of his or her former enrollee spouse under the plan.

¶ 13. On May 10, 1994, Ms. Motola filed with the Equal Rights Division (ERD) of the Department of Workforce Development (DWD)[5] a discrimination claim against the City.[6] Ms. Motola alleged that under the WFEA,[7] the City's denial of her request for sepa-

---

[5] The Department of Workforce Development (DWD) was formerly known as the Department of Industry, Labor and Human Relations (DILHR). *See* 1995 Wis. Act 289, § 275; 1995 Wis. Act 27, §§ 9130(4), 9430(5)

[6] There is no express reason in the record on appeal why Ms. Motola waited nearly 10 years before filing her discrimination complaint with the Equal Rights Division of the Department of Industry, Labor and Job Development. Wis. Stat. § 111.39(1) provides that "the department may receive and investigate a complaint charging discrimination. . .in a particular case if the complaint is filed with the department no more than 300 days after the alleged discrimination. . .occurred." This statute of limitations may be waived as an affirmative defense. *See Milwaukee Co. v. LIRC*, 113 Wis. 2d 199, 205, 335 N.W.2d 412 (Ct. App. 1983). Here the City has not raised the statute of limitations as a defense.

[7] The Wisconsin Fair Employment Act, §§ 111.31–111.395, provides in pertinent part:

**111.321 Prohibited bases of discrimination.** ". . . [N]o employer. . .may engage in any act of employment discrimination as specified in s. 111.322 against any individual on the basis of. . .marital status . . ."

**111.32(12)** "Marital status" means the status of being married, single, divorced, separated or widowed.

**111.322 Discriminatory actions prohibited.** Subject to ss. 111.33 to 111.36, it is an act of employment discrimination to do any of the following:

rate family health insurance coverage in her name discriminated against her on the basis of marital status. An ERD investigator determined that there was probable cause to believe that the City had violated the WFEA, and certified Ms. Motola's complaint for a hearing.

¶ 14. The hearing examiner[8] agreed that Ms. Motola had established by a fair preponderance of the evidence that the City violated the WFEA by adopting and maintaining a policy that provides for the reduction of the compensation paid by the City to one spouse if two City employees are married to each other. Specifically, the hearing examiner concluded that the City violated the WFEA by reducing Ms. Motola's compensation because she was married to another City employee.

¶ 15. On review, LIRC reversed the decision of the hearing examiner and dismissed Ms. Motola's complaint. Ms. Motola appealed, and the circuit court affirmed LIRC's decision. The circuit court held that the City did not discriminate against Ms. Motola because of her marital status. The court further concluded that Ms. Motola was not harmed because she received health coverage as a dependent under a family policy instead of as an enrollee of an individual policy.[9]

---

(1). . .to discriminate against any individual in promotion, compensation or in terms, conditions or privileges of employment. . .because of any basis enumerated in s. 111.321.

[8] Wis. Stat. § 111.39(4) refers to persons who hear and decide complaints of discrimination under the Wisconsin Fair Employment Act as hearing examiners, not administrative law judges. *See also Jicha v. DILHR,* 169 Wis. 2d 284, 292 n.4, 485 N.W.2d 256 (1992).

[9] At the ERD hearing, Ms. Motola testified that since the City canceled her own policy she has gone without "certain

¶ 16. Ms. Motola appealed from the order of the circuit court, and the court of appeals certified two questions to this court.

## STANDARD OF REVIEW

¶ 17. In an appeal from a circuit court order in an administrative review proceeding, the appellate court reviews the agency's decision and not the order of the circuit court. *See Barnes v. DNR*, 178 Wis. 2d 290, 302, 506 N.W.2d 155 (Ct. App. 1993), *aff'd* 184 Wis. 2d 645, 661, 516 N.W.2d 730 (1994). This case concerns interpretation of a statute, the WFEA, as it applies to a municipal employer of a married couple. We also interpret portions of Wis. Stat. ch. 40, pertaining to group health insurance for public employees. Statutory interpretation presents a question of law. We generally review questions of law independently, benefiting from the analysis of the circuit court. In cases where the agency has expertise in administering and interpreting the statute, we may afford the agency's determination deference. *See, e.g., Jicha v. DILHR*, 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992). In this case LIRC was called upon to harmonize a court of appeals decision with a supreme court decision. When an agency is only interpreting appellate case law, we accord the agency's determination no deference. Thus, our review is de novo.

---

health plans that covered glasses or dental work, maybe gynecologist." Ms. Motola testified that she was not able to choose the physicians that she used to have once she and her husband had to select a new family physician.

The parties also stipulated that in 1993 through 1995, if an employee elected family coverage, the City's contribution was in excess of $400 per month for that coverage.

I.

¶ 18. Before we review LIRC's reasoning, we describe the two Wisconsin opinions which have addressed the application of the WFEA marital status discrimination clause to employers' health insurance coverage practices.

¶ 19. In 1993, we considered whether the marital status clause of the WFEA permitted a school district to enforce its health insurance nonduplication policy. *See Braatz*, 174 Wis. 2d at 288. Plaintiffs were teachers, married to spouses employed by other employers. The collective bargaining agreement in place for the school district provided that "a married teacher who [sic] spouse is eligible for family coverage at his/her place of work shall have the option of carrying either the district's policy or the spouse's policy but not both. If the spouse carries a single plan, the employee of the district shall be eligible for a single plan through the district." *Id.* at 289. The condition of the collective bargaining agreement in *Braatz* applied to both publicly and privately employed spouses of district employees.

¶ 20. The nonduplication policy in *Braatz* was applicable only to married employees. *See id.* at 290. We considered that the WFEA, which prohibits employers from discriminating against an individual based on marital status, is to be liberally construed. *See id.* at 291. LIRC contended in *Braatz* that the school district's policy was not discriminatory but was triggered by conduct of the employee. We concluded, however, that the policy constituted marital status discrimination because it required only married employees with duplicate coverage to make a choice between the district's insurance plan or that of their spouse's employer. *See id.* at 291–92.

¶ 21. LIRC also argued in *Braatz* that health insurance benefits were implicitly excepted from the WFEA's prohibitions because the State, as an employer, was statutorily permitted to offer different health insurance benefits to married and to single employees. *See id.* at 292–93, citing Wis. Stat. §§ 40.52(1)(a) and 40.02(20). We disagreed with LIRC's implied exception theory. *See id.* at 293–94.

¶ 22. In reaching that conclusion, we first distinguished the court of appeals' decision in *Phillips v. Wisconsin Personnel Commission*, 167 Wis. 2d 205, 220, 482 N.W.2d 121 (Ct. App. 1992), because that case involved not a married couple, but an employee and her companion. *See Braatz*, 174 Wis. 2d at 294. Next, we assumed, for the sake of LIRC's argument, that the State's nonduplication policy indicated an implied exception to the WFEA prohibition. We distinguished the State's policy from that of the school district at bar because the district's policy covered employees with spouses employed elsewhere. *See Braatz*, 174 Wis. 2d at 294. Third, we pointed to the only express exception in the WFEA, the exception for age discrimination on health insurance issues. *See id.* at 295; Wis. Stat. § 111.33(2)(d). Finally, we took support from the liberal construction clause of the WFEA. Based on all of the above, we declined to adopt LIRC's theory of a general implied exception to the WFEA marital status discrimination clause in the case of health insurance benefits. *See id.*

¶ 23. Significantly, we did not decide in *Braatz* the question of whether there are any implied exceptions to the marital status discrimination clause of the WFEA for married co-employees. We simply held that in that case, the Maple School District's nonduplication policy violated the WFEA, and did not fall "within an

exception, express or implied, to the WFEA's prohibition . . ." *Id.* at 295.

¶ 24. Three years after our decision in *Braatz*, the court of appeals decided *Kozich v. Employe Trust Funds Board*, 203 Wis. 2d 363, 553 N.W.2d 830 (Ct. App. 1996). In that case, both spouses were State employees. The husband had a family health insurance plan through his employing agency since 1987. That plan covered the husband, his wife and their two children. In 1988, his wife, employed by a different state agency, also applied for and received family coverage under the State plan. All four family members were covered. In 1991 the husband was advised that he and his wife could not both continue to carry family coverage, and that one of them would have to drop their family coverage, or they would both have to change to single plans. *Id.* at 366–67.

¶ 25. Although the plaintiffs in *Kozich* asserted that the *Braatz* analysis controlled their WFEA marital status discrimination claim, the court of appeals disagreed. *See id.* at 371. The Kozichs asserted that the State's nonduplication policy discriminates on the basis of marital status. The court of appeals concluded that Wis. Stat. §§ 40.52(1)(a)[10] and 40.02(20)[11] were

---

[10] **Wis. Stat. § 40.52 Health care benefits. (1)** The group insurance board shall establish by contract a standard health insurance plan in which all insured employes shall participate except as otherwise provided in this chapter. The standard plan shall provide:

(a) A family coverage option for persons desiring to provide for coverage of all eligible dependents and a single coverage option for other eligible persons.

[11] Wis. Stat. § 40.02(20) "Dependent" means the spouse, minor child, including stepchildren of the current marriage dependent on the employe for support and maintenance, or child of any age, including stepchildren of the current marriage,

ambiguous, and so looked to the legislative history of those provisions.

¶ 26. The court of appeals' research determined that the state health insurance program:

> was established by Laws of 1959, ch. 211, § 15, and the board was authorized, as it continues to be today, to "provide a plan. . .of standard health insurance coverage" for state employees. It was also authorized to determine, by rule, "the possible coverage when there is or has been state employment by more than one member of a family." Section 66.919(7)(b) and (c), Stats. (1959). Pursuant to that grant of authority, the board promulgated WIS. ADM. CODE § GRP 20.10, which provided that "[i]f both spouses are eligible for coverage each may select individual coverage. . . .[But if] one spouse selects family coverage the other spouse may not select any coverage. . . . ."[12]

203 Wis. 2d at 374.

¶ 27. The *Kozich* court continued to trace the legislative history of the nonduplication policy of the state health insurance program:

if handicapped to an extent requiring continued dependence. For group insurance purposes only, the department may promulgate rules with a different definition of "dependent" than the one otherwise provided in this subsection for each group insurance plan.

[12] As the *Kozich* court noted, the language of the board rule was amended (and renumbered) in 1978 to read: "If both spouses are eligible for coverage, each may elect single coverage. . . .If one eligible spouse elects family coverage, the other eligible spouse may be covered as a dependent but may not elect any other coverage. WIS. ADM. CODE § GRP 20.11." 203 Wis. 2d at 374 n.8.

In 1981, the legislature enacted §§ 40.52(1)(a) and 40.02(20), Stats., in the same form as they exist today. *See* Laws of 1981, chs. 96 and 381, § 24. During the same legislative session, WFEA was amended to prohibit, for the first time, discrimination based on marital status. *See* § 111.321, Stats. (created by Laws of 1981, ch. 334, § 10).[13]

*Id.*

¶ 28. The legislature, after including marital status discrimination as a basis for an employment discrimination claim, appeared to have retained an exception for the State as an employer. The *Kozich* court resolved the apparent incongruity based on legislative intent:

When the Legislature amended the WFEA to prohibit marital status discrimination, it could not have intended to nullify the restricted options for health insurance coverage which it created in secs. 40.52(1)(a) and 40.02(20), Wis. Stats. This is true for several reasons. First, the Legislature added the marital status discrimination provision to the WFEA in the same legislative session that it created sec. 40.52(1)(a) and 40.02(20) to restrict options for health care insurance coverage.

Second, the creation of secs. 40.52(1)(a) and 40.02(20) gave statutory recognition to the long-standing administrative rule, sec. GRP 20.11, Wis. Adm. Code, which had mandated such restricted coverage since 1960. When the legislature enacts a statute it is presumed to act with full knowledge of existing laws.

---

[13] The *Kozich* court then noted that after the adoption of §§ 40.52(1)(a) and 40.02(20), Stats., and under the authority of those statutes, WIS. ADM. CODE § GRP 20.10 was repealed in 1986. *See* 203 Wis. 2d at 374 n.9.

Third, there is no indication on the record that the Legislature debated or intended a repeal of secs. 40.52(1)(a) and 40.02(20) or sec. GRP 20.11. Repeals by implication are not favored in the law.

Fourth, it is a cardinal rule of statutory construction that when a general statute and a specific statute relate to the same subject matter, the specific statute controls. In this case, the specific restriction on health insurance options contained in secs. 40.52(1)(a) and 40.02(20), control over the general prohibition against marital status discrimination contained in the WFEA.

203 Wis. 2d at 375–76 (citing *Ray v. Personnel Comm'n,* No. 84-CV–6165, slip op. at 3–4 (Dane Co. Cir. Ct. May 15, 1985)).

¶ 29. By endorsing this explanation of the legislative intent, the *Kozich* court recognized that when the legislature created §§ 40.52(1)(a) and 40.02(20), it may not have restated exactly the language of the repealed Wis. Admin. Code § GRP 20.10. *See Kozich,* 203 Wis. 2d at 376. However, the court of appeals was impressed by what was not in the legislative history for that session. There was no fiscal estimate of the effect of wiping out the limitation on family coverage for married State employees. The financial effect of such a change would have been an addition of at least $20,000,000 in annual premium costs to the State. *See id.* at 376 and n.10. On the basis of its thorough review, the *Kozich* court concluded that the legislature did not intend to wipe out the limitation, but instead intended to preserve the long-standing practice of restricting group health insurance coverage for State employees. *See id.*

## II.

¶ 30. In reaching its decision in this case, LIRC agreed with the ERD hearing examiner that the City's policy distinguishes based on marital status, potentially subjecting it to the WFEA prohibition on marital status discrimination. Nonetheless, LIRC reasoned that so long as the Motolas' legal marital status continued, the rights of a spouse of an enrollee to health insurance benefits under the plan were no different from the rights of the enrollee. LIRC considered our decision in *Braatz* to leave open this question: Does legislative adoption of certain limitations on health insurance choices for State employees, whose spouses were also State employees, justify an implied exception for other employers who place similar limitations on health insurance choices for employees whose spouses have the same employer?

¶ 31. In LIRC's view, the question left open by *Braatz* was answered by the court of appeals in *Kozich*. In its written decision, LIRC observed two factual distinctions between *Braatz* and *Kozich*. First, in *Braatz*, the employer's policy limiting coverage extended to employees whose spouses were covered by any other employers. In *Kozich*, the policy extended only to employees whose spouses worked for the same employer. The second distinction between the two decisions, according to LIRC, was that in *Kozich* the employer was the State, while in *Braatz* the employer was not. LIRC was persuaded that the former distinction was most significant for purposes of the WFEA. LIRC derived a rule from *Kozich* that a policy restricting married co-employees to one company-sponsored health policy is not marital status discrimination. LIRC also concluded, on policy grounds, that applica-

tion of the WFEA could not differ based on whether the employer is the State or another employer.

¶ 32. Ms. Motola advances several arguments why the City should not be exempted from the marital status clause of the WFEA in its provision of health insurance coverage. First, she relies on the statutory construction maxim, *expressio unius est exclusio alterius*, requiring that "where the legislature specifically enumerates certain exceptions to a statute, this court presumes that the legislature intended to exclude other exceptions based on the rule." *Georgina G. v. Terry M.*, 184 Wis. 2d 492, 512, 516 N.W.2d 678 (1994). Ms. Motola argues that because the legislature enumerated only one exception from the WFEA's marital status clause, that of preventing an employee spouse from supervising his or her spouse, *see* Wis. Stat. § 111.345, the court must conclude that the legislature did not adopt any other exceptions to the marital status discrimination clause.

¶ 33. Second, Ms. Motola contends that the outcome of this decision is controlled by our decision in *Braatz*. She reads *Braatz* as squarely rejecting the proposition that health insurance benefits are excepted from the WFEA's marital status discrimination clause. Ms. Motola points to the broad statement in *Braatz*, "Health insurance is not excepted from this prohibition [against marital status discrimination], expressly or implicitly." 174 Wis. 2d at 289. Ms. Motola also claims that our recognition of the sole express exception for insurance benefits under the age discrimination statute, *see* Wis. Stat. § 111.33(2)(d), does not mean that this court had reserved the right to find additional exceptions to the WFEA for insurance coverage beyond Wis. Stat. § 111.33(2)(d).

¶ 34. Next, Ms. Motola contends that even if there is an exception for married State co-employees, there is no basis in Wis. Stat. § 40.52(1)(a) or in *Braatz* upon which to conclude that a discrimination exemption should be extended to other public employers. Motola suggests that the legislature could have enacted specific legislation if it intended to exempt county or municipal employers from the WFEA marital status discrimination clause. Accordingly, she asserts that *Kozich* is not controlling because it is factually distinct, and because by its own terms, it is limited to state employment.

¶ 35. LIRC contends that its original decision was reasonable, and on that basis should be affirmed. LIRC conceded at oral argument that the City has distinguished its employees on the basis of marital status. However, LIRC asserts that if this court in *Braatz* had meant to read the State's nonduplication policy for married co-employees as the sole exception to marital status discrimination because of Wis. Stat. ch. 40, the *Braatz* court would have said so. Instead, LIRC reads both *Braatz* and *Kozich* to mean that any employer may impose a nonduplication policy for health insurance benefits for its married co-employees.

¶ 36. LIRC contends that the legislature's amendment of the WFEA, following this court's decision in *State ex rel Dept. of Public Instruction v. ILHR, 68 Wis. 2d 677, 229 N.W.2d 591 (1975)* to include the State as an "employer" demonstrates a legislative intent that the State be treated the same as other employers for all purposes of the WFEA.

¶ 37. In describing the City's position, we should first acknowledge that the City does not concede that it has distinguished employees based on marital status. The City agrees with LIRC that the conclusion of

*Kozich* controls the outcome here. The City points out that its nonduplication policy is identical to the State's nonduplication rule, and therefore *Kozich*'s conclusion that such a policy does not violate the WFEA prohibition against marital status discrimination should control.

¶ 38. The City of Kenosha (Kenosha) acting as amicus curiae, begins its argument by referring to *Kozich*, which held that there is an implied exception to the WFEA marital status clause for the State's nonduplication policy. Kenosha then asserts that the exception applies to other public employers, based on the ability of other public employers to participate in a state health insurance plan offered by the Group Insurance Board. Kenosha contends that the health insurance program offered under Wis. Stat. ch. 40, can be offered by the Department of Employe Trust Funds to workers employed by employers other than the State. Kenosha specifically refers to a provision in the Wisconsin Administrative Code:

**ETF 40.10 Public employers health insurance.**
**(1)** An employe of an employer, other than the state, shall be eligible for health insurance under s. 40.51(7), Stats., if the requirements of ss. 40.02(46) and 40.22 or of s. 40.19(4)(a), Stats., are satisfied.

Therefore, Kenosha argues that the implied exception recognized in *Kozich* not only applies to the State as an employer, but also to the City.

## III.

¶ 39. We conclude that the legislature intended to exempt public employers, as defined in Wis. Stat. ch. 40, and the regulations promulgated thereto, from the

marital status discrimination clause of the WFEA for purposes of family health insurance benefits provided to married co-employees.[14] We base our conclusion on the legislative intent, as reflected in provisions of Wis. Stat. ch. 40, to allow public employers to restrict family health insurance coverage provided to married co-employees.

¶ 40. Ms. Motola correctly states that nothing in the text of the WFEA expressly exempts public employers from application of the prohibition against marital status discrimination. She is also correct in stating that the only express exception with regard to health insurance benefits relates to the age of the insured. *See* Wis. Stat. § 111.33(2)(d). As this court pointed out in *Braatz*, there is no indication, within the WFEA, of an implied exception to the prohibition against discrimination in the provision of health insurance benefits. *See Braatz*, 174 Wis. 2d at 295.

¶ 41. The implied exception arises, however, from a reading of the public employee health insurance provisions of Wis. Stat. ch. 40. We therefore disagree with Ms. Motola when she asserts that the legislature did not intend to allow other public employers to operate under the same health insurance rules as does the State. As amicus Kenosha points out, the legislature has intended to permit exactly that.

¶ 42. Although the facts in *Kozich* were limited to the practice of the State as an employer, the legislative history analyzed by *Kozich* supports our conclusion. We therefore adopt the *Kozich* court's legislative his-

---

[14] We do not address the impact of this decision, if any, on the obligations of private employers. We therefore do not reach the broad conclusion that LIRC did, namely, that the implied exception for nonduplication policies applies to any employer. *See* footnote 2, supra.

tory analysis of Wis. Stat. ch. 40 and its interplay with the WFEA marital status clause. We also read the history of the State's nonduplication policy, and its consequent implied exception from the WFEA marital status clause, to apply to all public employers.

¶ 43. Subchapter IV of Wis. Stat. ch. 40, concerns health and long-term care benefits for public employees. Wisconsin Stat. § 40.51(7), created by 1985 Wis. Act 29, § 741, provides:

> Any employer, other than the state, may offer to all of its employes a health care coverage plan through a program offered by the group insurance board. Notwithstanding sub. (2) and ss. 40.05(4) and 40.52(1), the department may by rule establish different eligibility standards or contribution requirements for such employes and employers and may by rule limit the categories of employers, other than the state, which may be included as participating employers under this subchapter.

Another statute, Wis. Stat. § 66.185,[15] amended at the same time Wis. Stat. § 40.51(7) was created, also recognizes that municipalities like the City of New Berlin are authorized to participate in a plan offered by the group insurance board.[16]

---

[15] Wis. Stat. § 66.185 Hospital, accident and life insurance.

. . .

In addition, a municipality may, by ordinance or resolution, elect to offer to all of its employes a health care coverage plan through a program offered by the group insurance board under ch. 40. Municipalities which elect to participate under s. 40.51(7) shall be subject to the applicable sections of ch. 40 instead of this section.

[16] The legislative drafting file for 1985 Assembly Bill 85, which resulted in Wis. Stat. § 40.51(7) describes the purpose for the changes to chapter 40: "Permits extending ETF benefits coverage to local government and other organizations which

¶ 44. Section 40.51(7) was enacted after the legislature added marital status as a basis for discrimination under the WFEA, and also after the legislature codified the nonduplication policy for State employees. We assume that in 1985, when the legislature made other public employers and employees eligible to participate in the health insurance programs offered by the group insurance board, it was aware of both the WFEA provisions and the long-standing practice of allowing the State to limit its married co-employees to one family coverage policy. Thus, the implied exception recognized by the *Kozich* court applies equally to the State and to other public employers eligible to participate in programs offered by the group insurance board.

¶ 45. Ms. Motola, and the dissent, argue that even if this court, based upon Wis. Stat. ch. 40, were to recognize an implicit exception from the WFEA for nonduplication clauses, the City would not be eligible for the exception. Specifically, they argue that since the City has not "acted to make [state health insurance] available to its employees," pursuant to Wis. Stat. § 40.02(25)(b)9, it cannot benefit from an implicit exception.

¶ 46. We, however, do not read Wis. Stat. ch. 40 as creating an implicit exception to the WFEA for those employers having health insurance plans offered only by the state Group Insurance Board. Instead, we read Wis. Stat. ch. 40, as did the court of appeals in *Kozich*, to evince a legislative intent to permit restrictions on the health insurance coverage afforded publicly

facilitate or carry out public functions. This is currently of prime interest with respect to our ability to make the benefits of the health insurance plan restructuring more widely available."

employed married co-employees. We conclude that the legislature intended, by its language in Wis. Stat. ch. 40, to allow a public employer to limit its married co-employees to one family health insurance policy, and thereby exempt the employer from liability for that action under the WFEA.

¶ 47. We therefore conclude that the implied exception from liability under the WFEA's marital status clause extends to any public employer, as defined in Wis. Stat. ch. 40 and the regulations thereto, who limits its married co-employees to coverage under one family health insurance policy. Accordingly, we affirm the order of the circuit court affirming the decision of LIRC.

*By the Court.*—The order of the circuit court is affirmed.

¶ 48. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). I dissent because I disagree with the majority opinion's interpretation of the Wisconsin Fair Employment Act (WFEA), Wis. Stat. §§ 111.31–111.395 (1993–94), and Wis. Stat. §§ 40.52(1)(a) and 40.02(20) (1993–94).

¶ 49. The WFEA prohibits employers from discriminating "against any individual in promotion, compensation or in terms, conditions or privileges of employment" on the basis of marital status. Wis. Stat. § 111.322(1). The WFEA provides only one express exception to the prohibition against marital status discrimination, that is, "it is not employment discrimination because of marital status to prohibit an individual from directly supervising or being directly supervised by his or her spouse." Wis. Stat. § 111.345.

Moreover, the declaration of policy to the WFEA mandates liberal construction of the statute:

> In the interpretation and application of this subchapter, and otherwise, it is declared to be the public policy of the state to encourage and foster to the fullest extent practicable the employment of all properly qualified individuals regardless of. . .marital status.

Wis. Stat. § 111.31(3).

¶ 50. In this case the City of New Berlin's denial of Connie Motola's request for health insurance coverage under a policy in her name was discrimination based on her marital status. The Labor and Industry Review Commission (LIRC) concedes that by virtue of her loss of choice of health insurance coverage, Ms. Motola has suffered actual harm.

¶ 51. The question this court must address is whether the legislature exempted all public employers eligible to participate in a health insurance plan offered by the state group insurance board pursuant to Wis. Stat. § 40.52(1)(a) from the WFEA's prohibition against marital status discrimination whether or not they have elected to participate in a state health insurance plan. The City of New Berlin was not participating in such a plan at the time it denied Ms. Motola's request for health insurance coverage under a policy in her name.

¶ 52. Nothing in the text of the WFEA exempts public employers from complying with the prohibition against marital status discrimination. Accordingly this court has previously concluded that the marital status clause of the WFEA prohibits a school district from enforcing its health insurance non-duplication policy against a school district employee married to a person

employed by a non-public employer. *See Braatz v. LIRC*, 174 Wis. 2d 286, 295, 496 N.W.2d 597 (1993).

¶ 53. However, in *Kozich v. Employe Trust Funds Bd.*, 203 Wis. 2d 363, 374–76, 553 N.W.2d 830 (Ct. App. 1996), the court of appeals interpreted Wis. Stat. §§ 40.52(1)(a) and 40.02(20) as creating an implied exception to the WFEA prohibition for the state. Thus under *Kozich* the state may enforce its health insurance non-duplication policy when both spouses are employed by the state.

¶ 54. In this case LIRC seeks to read into the WFEA another implied exception allowing a municipality to enforce its health insurance non-duplication policy when both spouses are employed by the municipality, regardless of whether the municipality participates in a health insurance plan offered by the state group insurance board.

¶ 55. When a public employer elects to join a health insurance plan offered by the state group insurance board pursuant to Wis. Stat. § 40.52(1)(a), it is reasonable to conclude that the legislature intended the public employer to be treated the same as the state unless the statute provides otherwise. I thus agree with the majority opinion that the exception for the state should apply to all public employers who join a health insurance plan offered by the state group insurance board.

¶ 56. However, nothing in the WFEA or ch. 40 indicates that the legislature intended a public employer who does not join such a health insurance plan to be exempt from the WFEA prohibition against marital status discrimination. There is no public policy to support the conclusion that the legislature intended that public employers operating under non-state health insurance plans would be exempt from the

WFEA prohibition. Indeed the public policy expressed in the WFEA is that public employers should not engage in discrimination on the basis of marital status.

¶ 57. The legislature has instructed the courts that the WFEA shall be "liberally construed" to accomplish its purpose of protecting all individuals "to enjoy privileges free from employment discrimination because of. . .marital status." Wis. Stat. § 111.31(2),(3). When the court adds exceptions to the WFEA prohibition against discrimination, it contravenes the legislature's instructions for interpreting and applying the WFEA. The decision whether to write in an exception to the WFEA for all public employers is more properly reserved for the legislature.

¶ 58. For the foregoing reasons, I dissent.