PER CURIAM.
¶ 1 This is a foreclosure action initiated by Laurence Davies against his daughter and son-in-law, Tamera Davies Fuhrer and Todd Fuhrer. At the time of the final judgment, Tamera and Todd were in the process of getting a divorce. This appeal involves just Laurence and his daughter Tamera. For ease of discussion, we ignore Todd and speak as if Tamera was the sole defendant and mortgagor during all relevant time periods.
¶ 2 The circuit court granted Laurence's motion for summary judgment of foreclosure. Tamera contends, for multiple reasons, that the circuit court erred in granting Laurence's summary judgment motion and that she is entitled to a court trial. We disagree, and affirm the circuit court.
Background
¶ 3 In 2005, Tamera purchased a house in Monona, Wisconsin, from her father, Laurence.[1] Tamera financed the purchase with a mortgage loan from U.S. Bank. Tamera later took out a second mortgage.
¶ 4 In September 2008, Laurence assisted Tamera in refinancing her mortgage loans through McFarland State Bank. Tamera paid, respectively, $153,654.78 and $38,922.79 to pay off the first and second mortgages.[2] Undisputed testimony from Laurence indicates that Tamera was paying 8.5% interest on the primary mortgage loan and about 11% interest on the second mortgage loan. Laurence assisted Tamera in consolidating the loans into a single 7% loan. A "First Payment Letter" from McFarland State Bank indicates that, after refinancing, Tamera ended up with a new principal and interest payment of $1,296.03 and an escrow payment of $331.61, for a total new payment of $1,627.64. Laurence was a cosigner on this refinanced mortgage loan.
¶ 5 In June 2011, Laurence paid off the mortgage loan on Tamera's home. Tamera asserted that this was done without her knowledge or approval. Laurence then offered Tamera a mortgage loan at 4.5%. The principal balance of the new loan included amounts that Tamera later contested in response to Laurence's foreclosure action but, at the time of the mortgage agreement with Laurence, Tamera agreed to a $191,846.63 mortgage loan at 4.5% interest with a principal and interest payment of $972.06 and an escrow payment of $409 for property taxes and insurance, for a total payment of $1,381.06. Tamera entered into this new mortgage loan agreement with Laurence in August 2011.
¶ 6 With exceptions that do not matter for purposes of this appeal, Tamera stayed mostly current with her principal and interest mortgage payments to Laurence until approximately January 2015. Thereafter, according to Laurence's amortization schedule and payment information submitted by Tamera, Tamera made five more monthly payments that, with one exception, excluded an amount for escrow. In effect, prior to the filing of the foreclosure action, Tamera's last mortgage payment was applied to her payment due in June 2015.[3]
¶ 7 Laurence commenced this foreclosure action about one year later in July 2016. In March 2017, Laurence filed a motion for summary judgment of foreclosure. Tamera filed a brief in opposition to Laurence's motion, along with a document titled "Statement of Proposed Undisputed Facts" with attached documentary support.
¶ 8 The circuit court held a hearing on the motion on June 28, 2017, at which Tamera appeared pro se. Perhaps because of incomplete and sometimes conflicting information in the pleadings and submissions, the circuit court permitted both parties to provide additional factual allegations, in the form of testimony. One focus of the hearing was on whether there were any material factual disputes regarding Tamera's payment history and Laurence's handling of the escrow payments.
¶ 9 According to Laurence's documentation and his testimony, most of Tamera's payments included the agreed-on escrow amount of $409. Laurence did not keep a separate escrow account, and he does not dispute that he did not, either directly or through Tamera, apply all of the escrow payments to property taxes and insurance. Laurence's documents and testimony indicate that he received from Tamera escrow payments totaling $15,542 and that he disbursed $9,910.35, including a direct payment of 2013 property taxes of $4,675.59 and a $3,000 payment to Tamera at the end of 2012 for attorney fees she owed.
¶ 10 Tamera disputed these figures. According to Tamera, she paid a total of $18,814 in escrow to Laurence and, from that amount, Laurence only paid property taxes in 2013 and gave her an additional $3,000. In total, Tamera stated that Laurence paid $7,675.59 for her benefit. Thus, Tamera contended that Laurence owed her $11,138.41, the difference between the $18,814 in escrow payments to Laurence and the $7,675.59 disbursed for her benefit. According to Tamera, she paid her homeowner's insurance without help from Laurence or the escrow account.[4]
¶ 11 The circuit court accepted Tamera's accounting of Laurence's handling of escrow funds as correct and concluded that Tamera should get a "credit" of $11,138.41 that she could use toward paying the delinquent property taxes. The court inquired about the current back taxes owed. Tamera informed the court that, as of June, 2, 2017, the back taxes, penalties, and interest totaled $13,110.[5]
¶ 12 When Tamera was asked by the circuit court about falling behind in mortgage payments, she did not, at least in any clear way, blame Laurence's handling of the escrow funds. Rather, she said she fell behind because of surgery for cancer, her husband leaving her, a torn rotator cuff injury, and her inability to work, first because of cancer and later because of the shoulder injury. We acknowledge that Tamera made the vague assertion that the "[mortgage] got screwed up ... because of the escrow account." But, when questioned further by the circuit court, she repeated that the reason she missed mortgage payments was that she "got cancer... and then [her] husband left." Indeed, Tamera stated: "I breached the contract in April of 2015 when I was not able to make any more payments because I was not working and had no income."
¶ 13 The circuit court concluded that there was no dispute that Tamera defaulted on her obligation to make principal and interest payments to Laurence under the mortgage note and, therefore, granted Laurence's request for a foreclosure judgment. As to Tamera's allegation that Laurence failed to use $11,138.41 in escrow funds to pay property taxes and insurance, the court, as noted, accepted Tamera's assertion and, as a remedy, reduced Laurence's judgment. However, the circuit court reduced Laurence's judgment, not by the $11,138.41 claimed by Tamera, but by $13,110, the amount of the current tax delinquency, as reported by Tamera. The foreclosure judgment gives Tamera an "escrow credit" of $13,110 "as a result of [Tamera's] escrow account with [Laurence]."
Discussion
¶ 14 Tamera challenges the circuit court's decision to grant summary judgment to Laurence. We review a grant of summary judgment de novo, employing the same methodology as the circuit court. Palisades Collection LLC v. Kalal , 2010 WI App 38, ¶ 9, 324 Wis. 2d 180, 781 N.W.2d 503. First, we determine whether the pleadings set forth a claim for relief. Baumeister v. Automated Prods., Inc. , 2004 WI 148, ¶ 12, 277 Wis. 2d 21, 690 N.W.2d 1. If they do, we next examine the moving party's submissions to determine whether those submissions constitute a prima facie case for summary judgment. Palisades , 324 Wis. 2d 180, ¶ 9. If they do, we then examine the opposing party's submissions to determine whether material facts are in dispute that entitles the opposing party to a trial. Id. A party is entitled to summary judgment if there is no genuine issue of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2015-16).[6]
¶ 15 Tamera's briefing on appeal is built around her assertion that the circuit court improperly restricted her ability to present evidence and her assertion that the circuit court failed to recognize that Tamera raised counterclaims and defenses that should have prevented summary judgment. So far as we can tell, all of Tamera's arguments hinge on an underlying proposition that her default was a result of two actions by Laurence: (1) Laurence paying off her McFarland State Bank mortgage in 2011 without her consent; and (2) Laurence failing to use all of the escrow funds he received from Tamera to pay property taxes and insurance. It follows, according to Tamera, that it was not equitable to grant Laurence's request for a foreclosure judgment.
¶ 16 We first address Tamera's contention that her ability to present evidence at the summary judgment hearing was improperly limited and her allegations that Laurence's actions caused her to default. We then discuss the specific defenses and counterclaims that Tamera contends require further proceedings.
A. Whether The Circuit Court Improperly Prevented Tamera From Presenting Additional Evidence
¶ 17 Tamera argues that the circuit court's decision to hear testimony from both Tamera and Laurence at the hearing on Laurence's summary judgment motion means that Tamera was "entitled ... to a full evidentiary hearing with the right to call witnesses, present evidence, and cross-examine opposing witnesses." Indeed, Tamera contends that the court's employment of an "unusual approach" at the hearing "meant that there were material issues of fact ... [and] the Court should have ... set the matter for a full trial." According to Tamera, the circuit court's decision to allow both parties to supplement their submissions with sworn testimony at the summary judgment hearing compelled the court to "allow [Tamera] a full trial."
¶ 18 Tamera's argument is undeveloped, unsupported by legal authority, and meritless. Nonetheless, we briefly discuss the matter.
¶ 19 First, Tamera does not identify a place in the transcript where she asked to present additional evidence and the circuit court refused her request. Indeed, our review indicates that, after affording Tamera wide latitude to present additional information, the circuit court inquired: "Do you have anything more you want to tell me?" Tamera indicated that she wanted to know more about the escrow numbers, and the circuit court responded by delving further into that matter.[7]
¶ 20 Second, Tamera does not explain why she had a legal right to present more evidence at the hearing on Laurence's motion for summary judgment. Tamera was bound by the rules of summary judgment to provide evidentiary submissions five days before the summary judgment hearing. See WIS. STAT. § 802.08(2). If we simply examined the submissions of the parties prior to the hearing, we would have no trouble concluding that Laurence made a prima facie case for summary judgment and that Tamera failed to raise a material factual dispute preventing summary judgment. The fact that the circuit court allowed the parties to make additional factual allegations at the summary judgment hearing and to accept Tamera's allegations as true for purposes of summary judgment benefited her with respect to her escrow allegations and did not obligate the circuit court to go further and provide Tamera with a "full trial." We discuss the matter no further.
B. Laurence's Paying Off the McFarland State Bank Mortgage
¶ 21 In her submissions and at the summary judgment hearing, Tamera complained that Laurence's unilateral decision to pay off the McFarland State Bank mortgage "caused more problems than it helped." We will assume in Tamera's favor that she effectively, albeit vaguely, suggested to the circuit court that, if she had remained with McFarland State Bank, the bank would not have mishandled her escrow funds and she would not have ended up defaulting on her mortgage loan. Tamera makes the bald assertion with greater clarity on appeal, but still does not point to evidence supporting the proposition.
¶ 22 The primary problem with Tamera's argument is that she does not demonstrate that Laurence, a cosigner on the mortgage note, lacked the right to pay off the McFarland State Bank mortgage. Further, Tamera does not explain why her decision to enter into a new mortgage agreement with Laurence did not effectively forfeit any legal right she might have had to complain about the payoff. Finally, Tamera's damages argument is inadequate because she does not address the benefit she received in the form of a substantially lower interest rate and a corresponding reduction in her principal and interest payments, from $1,296.03 to $972.06. That is, Tamera does not discuss or take into account the substantial benefit she received as a result of the reduction in her interest rate.
¶ 23 As to Tamera's related argument that the principal amount she borrowed from Laurence was too high because it included legal fees and payments to MG&E, the amounts are small and do not come close to negating the benefit Tamera received in the form of a lower interest rate. For that matter, as the circuit court effectively informed Tamera, she agreed to the mortgage principal amount back in 2011 and it was too late to complain about that figure in the foreclosure action. In the court's words: "[T]he fact that you signed it [in 2011] makes it a binding contract and not subject to collateral attack at the foreclosure." If there is a problem with this reasoning, Tamera has failed to identify it.
C. Laurence's Handling of the Escrow Funds
¶ 24 As summarized in the background section, we assume as true Tamera's assertion that Laurence failed to use $11,138.41 in escrow funds for Tamera's benefit with respect to property taxes and insurance. On appeal, Tamera argues that, if Laurence had not mishandled the escrow funds, Tamera would not have been forced to pay "12,000-some-odd-dollars" in taxes "out of her own pocket" and that that money would have instead been available to continue making mortgage payments when Tamera got sick. According to Tamera, she would have been able to pay Laurence for almost nine additional months and "might have been able to avoid defaulting altogether." We reject this argument for two reasons.
¶ 25 First, as indicated in our background summary, Tamera did not make this argument before the circuit court and, therefore, the argument is forfeited. Although this court engages in summary judgment review de novo, we may deem arguments forfeited if presented for the first time on appeal. See, e.g. , Hopper v. City of Madison , 79 Wis. 2d 120, 137, 256 N.W.2d 139 (1977). We may ignore forfeiture, but generally choose not to do so when the opposing party might have presented additional factual submissions to defeat the argument. See, e.g. , Gruber v. Village of North Fond du Lac , 2003 WI App 217, ¶ 27, 267 Wis. 2d 368, 671 N.W.2d 692 (applying waiver rule); see also Hart v. Bennet , 2003 WI App 231, ¶¶ 22-24, 33-34, 267 Wis. 2d 919, 672 N.W.2d 306 (concluding there was no waiver). Here, Laurence has been deprived of the opportunity to explore and present evidence as to whether Tamera would have had the ability to keep current with her mortgage loan obligations if only Laurence had used all escrow funds for Tamera's benefit with respect to property taxes and insurance.
¶ 26 Second, even if we did not apply forfeiture, by Tamera's own admission the escrow amount at issue would have, at best, enabled Tamera to pay for an additional nine months. Notably, Tamera informed the circuit court that she stopped making payments because she was "not working and had no income." Thus, we conclude, based on the undisputed facts, that Tamera would have defaulted on the loan prior to Laurence filing suit, regardless of Laurence's handling of the escrow funds.
D. Affirmative Defenses
¶ 27 On appeal, Tamera argues that she raised the affirmative defenses of breach of contract and unclean hands. It is not surprising that the circuit court did not expressly address the defenses because they are not identified by name in the answer, and there was no discussion of them at any point as defenses. Still, we will assume for argument's sake that Tamera pled these defenses in her answer. We conclude that the defenses do not preclude the foreclosure judgment for the reasons that follow.
1. Breach of Contract
¶ 28 Tamera argues that Laurence breached the mortgage contract by failing to use all of the funds for property taxes and insurance, forcing Tamera to pay "12,000-some-odd-dollars" in taxes in 2014. According to Tamera, but for this breach she "might have been able to avoid defaulting."
¶ 29 We have already dealt with part of the substance of this defense by explaining that Tamera does not present a developed argument on this topic because she fails to come to grips with undisputed evidence showing that she placed blame on her inability to make mortgage payments on her own inability to work and the failure of her husband to assist financially. We now add that, as a breach of contract theory, Tamera fails to show that Laurence was under any particular obligation with respect to his handling of the escrow funds. We discuss the matter no further.
2. Unclean Hands
¶ 30 In her unclean hands argument, Tamera contends that by paying off the mortgage with McFarland State Bank, imposing a mortgage with different terms, and not paying the taxes on the property out of her escrow payments, Laurence caused Tamera's default. Once again, we have already dealt with the substance of this defense. We have explained that, considering the new principal balance and the lower interest rate, the different terms of the mortgage note offered by Laurence were more favorable to Tamera than the mortgage loan she had with McFarland State Bank. And we have explained why the undisputed facts do not support a claim that Tamera would not have defaulted but for Laurence's handling of the escrow payments. Moreover, as we shall see in ¶ 37 below, Tamera points to no record support for the proposition that Laurence "imposed" a new mortgage arrangement on her.
E. Counterclaims
¶ 31 Tamera contends that her answer states two counterclaims: tortious interference with contract, and civil theft under WIS. STAT. § 895.446. As we understand it, as to these counterclaims Tamera is not seeking to defeat the foreclosure judgment, but is instead contending that she should have been permitted to further litigate whether Laurence owed her damages based on the two counterclaims. We disagree, and address each counterclaim separately below.
1. Tortious Interference with Contract
¶ 32 We question whether Tamera sufficiently alleged this counterclaim, but choose to address the merits of Tamera's allegations.
¶ 33 Tamera lists the elements of tortious interference with contract. As pertinent here, Tamera must allege a connection between the interference and damages, meaning that she must prove damages and she must allege that the interference was not justified or privileged. See Finch v. Southside Lincoln-Mercury, Inc. , 2004 WI App 110, ¶ 18 n.8, 274 Wis. 2d 719, 685 N.W.2d 154 (listing the elements of tortious interference with contract).
¶ 34 On appeal, Tamera asserts the following:
• She incurred damages because the principal balance of the mortgage improperly included attorney's fees and an amount she had already paid to MG&E.
• The original loan she "had taken out was for $122,000" and "[t]he principal on the new loan as of March 2017 was $179,086."
• It was "never explained in any pleading or testimony how the loan had increased from a $122,000 loan at the time [she] purchased the house from Laurence to a $198,000 loan only a few years later."
• She was "pressed to pay money" and "essentially under duress" when she signed the mortgage agreement and note with Laurence.
• "Laurence gave no reason for [paying off the McFarland State Bank mortgage and entering into a new mortgage agreement with Tamera] other than the fact that he had broken his relationship with McFarland."
All of these assertions are flawed.
¶ 35 As we have previously explained, the inclusion of the MG&E payment and the attorney's fees, even if incorrect, does not come close to negating the benefit Tamera received in the form of a lower interest rate.
¶ 36 As to the increase in the principal balance of the mortgage loan, Tamera ignores the undisputed fact that she took out a second mortgage and the vast majority of the increase in the principal balance is attributable to the second mortgage. We have already dealt with an undeveloped footnote in Tamera's appellate brief asserting that "the amount of that second mortgage was never put into evidence." See supra , ¶ 4 n.2.
¶ 37 Tamera asserts on appeal that she was "pressed to pay money" and "under duress" but she does not point to support in the record for these assertions. This is not surprising. Even assuming that Tamera later regretted entering into a contract with Laurence, at the time of the mortgage agreement with Laurence the terms of the new mortgage were far better than the one Tamera had with McFarland State Bank.
¶ 38 Finally, we reject Tamera's assertion that the only reason in the record for Laurence's decision to pay off the McFarland State Bank mortgage and entering into a new mortgage agreement with Tamera was his broken relationship with McFarland State Bank. Rather, it is apparent from the record that Laurence made the move, at least in substantial part, to help Tamera. As Laurence told the circuit court: "So the whole process from 8.5 and 11 percent [for the original and second U.S. Bank mortgages] down to 7 [for the McFarland State Bank mortgage], down to 4.5 [for the mortgage extended by Laurence], dropped [Tamera's] payments substantially as we progressed down this road." The notion that Laurence would take the drastic action of paying off Tamera's mortgage just because Laurence was severing ties with McFarland State Bank is wholly unsupported by the record.
¶ 39 There are other reasons why Tamera's tortious interference with contract argument fails, but its fundamental flaw is that it relies on a narrative unsupported by the record.
2. Civil Theft
¶ 40 Apart from whether Tamera's pleading apprised Laurence of a tortious interference with contract claim, it most certainly did not give notice of a claim for civil theft under WIS. STAT. § 895.446, as Tamera now asserts on appeal.
¶ 41 To begin, there is no mention of the word "theft" or any similar word in Tamera's answer. She does allege in her answer that the "escrow account ... has not been properly kept in a bank account and has not been applied to the property taxes or insurance for the property," but she does not allege that Laurence took the money or otherwise used it for his own purposes.
¶ 42 Tamera seems to assume that the circuit court should have recognized, based on Tamera's assertions and testimony at the summary judgment hearing, that she was making a civil theft counterclaim. But Tamera does not provide authority for the proposition that factual allegations, apart from pleadings, can satisfy counterclaim pleading requirements.
¶ 43 Tamera is correct that courts generally accord pro se litigants a degree of leeway in complying with the rules expected of lawyers. See Rutherford v. LIRC , 2008 WI App 66, ¶ 27, 309 Wis. 2d 498, 752 N.W.2d 897. However, a pro se litigant must satisfy all procedural requirements, and a circuit court has no duty to walk him or her through the procedural requirements or to point him or her to the proper substantive law. See Waushara Cty. v. Graf , 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992). In sum, the circuit court had no duty to develop Tamera's legal arguments for her or to instruct her on how to amend her pleadings to include the civil theft claim.
F. Reversal in the Interest of Justice
¶ 44 Tamera also asks this court to reverse the judgment in the interest of justice pursuant to WIS. STAT. § 752.35. Under § 752.35, appellate courts have a broad power of discretionary reversal if the real controversy has not been fully tried or if there has been a miscarriage of justice. See Vollmer v. Luety , 156 Wis. 2d 1, 19, 456 N.W.2d 797 (1990). This discretionary reversal power is "reserved for 'exceptional cases.' " State v. Jones , 2010 WI App 133, ¶ 43, 329 Wis. 2d 498, 791 N.W.2d 390 (quoted source omitted).
¶ 45 Tamera argues that we must remand due to the evidence that her escrow funds were converted and because the circuit court "never allowed Tamera to actually enter her documents into evidence, and several times cut off her testimony." These arguments merely repeat Tamera's other arguments on appeal, which we have concluded to be without merit. Adding them together adds nothing because "[z]ero plus zero equals zero." See Mentek v. State , 71 Wis. 2d 799, 809, 238 N.W.2d 752 (1976).
Conclusion
¶ 46 For the reasons above, we affirm the circuit court's granting summary judgment of foreclosure in favor of Laurence.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Prior to the hearing on Laurence's motion for summary judgment, Tamera submitted a document entitled "Statement of Proposed Undisputed Facts" containing 27 numbered statements and assertions. She attached over 100 pages of supporting documentation. We treat the document and attachments as a proper evidentiary submission, accepting as true all factual assertions and reasonable inferences from the documents.

Tamera asserts that the amount of the second mortgage "was never put into evidence." Whatever Tamera means by "put into evidence," the existence and amount of the second mortgage is not disputed. Tamera filed a document with the circuit court stating that the amount of the second mortgage loan was $38,400. We note that the second mortgage loan amount corresponds to the $38,922.79 that Tamera paid to satisfy that second mortgage in 2008, an amount that presumably included interest owed.

This summary of payments is based on undisputed evidence and the evidence viewed most favorably to Tamera. Laurence's records show that Tamera made payments in September and November 2015 and again in April 2016. Tamera presented evidence that she made payments in June 2016 and March 2017, the first by cashier's check and the second by check with a copy of a bank record indicating that the check cleared. At the hearing, Laurence contended that Tamera gave him two other checks that did not clear. Tamera did not contest that assertion, and the documentation she submitted is consistent with Laurence's assertion. Tamera submitted evidence that she wrote checks in April and May 2017, but, unlike other check evidence she submitted, she did not supply information indicating that these checks cleared.

It may be that, in some years, in lieu of making a full payment of principal, interest, and escrow to Laurence, Tamera may have made a partial payment and used the balance of the payment to pay her house insurance.

Tamera did not specify 2017, but the hearing was held on June 28, 2017, and Tamera informed the court that she "printed [the tax delinquency] June 2nd." We perceive no dispute that Tamera was referring to June 2, 2017.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Tamera argues that she was denied the opportunity to present proof of the payments she made to Laurence to rebut Laurence's assertions regarding Tamera's payments. In support, Tamera quotes an exchange between her and the circuit court at the summary judgment hearing. However, in the very transcript language she quotes, Tamera is directing the circuit court's attention to her pre-hearing submission that includes support for payments Tamera alleges she made that Laurence did not give her credit for.