Brenda RUTHERFORD,
Petitioner-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION
and Wackenhut Corporation,
Respondents-Respondents.

Court of Appeals

*No. 2006AP3110. Submitted on briefs October 3, 2007.
—Decided March 18, 2008.*

2008 WI App 66

(Also reported in 752 N.W.2d 897.)

499

500

FINE, J., concurs.

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Brenda Rutherford.*

On behalf of the respondents-respondents, the cause was submitted on the brief of *David C. Rice,* assistant attorney general and *J.B. Van Hollen,* attorney general.

Before Wedemeyer, Fine and Kessler, JJ.

¶ 1. KESSLER, J. Brenda Rutherford appeals *pro se* from a circuit court order affirming the Labor and Industry Review Commission's decision. The Commission upheld the decision of the Department of Workforce Development (DWD), Equal Rights Division (ERD), which dismissed Rutherford's disability discrimination complaint against Wackenhut Corporation (Wackenhut) because of her failure to obtain certified copies of her medical records and her failure to disclose to Wackenhut that she intended to use the copies of medical records at the hearing. We reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. Wackenhut operates the Public Service Ambassador (PSA)[1] program throughout downtown Milwaukee. The purpose of the PSA program is to promote tourism in Milwaukee. Among other things, the ambas-

[1] PSA is used to identify the program and also used to describe the ambassador-employees individually.

sadors hand out informational brochures about attractions in the City; assist visitors by providing directions; and act as extra sets of eyes and ears for the Milwaukee Police Department.

¶ 3. Rutherford began working as an ambassador in 1999. Rutherford took her job very seriously and enjoyed helping others explore Milwaukee. She was selected for the 2001 Greater Milwaukee Convention and Visitors Bureau "Visitor Award" from 2600 candidates.

¶ 4. On July 3, 2003, Rutherford fell while she was working near a road construction site on Wells Street in downtown Milwaukee. She slipped on some loose sand, injured her right hand, aggravated a previous work-related injury to her left ankle and sustained some other injuries. As a result of the fall, Rutherford required surgery on her hand and ankle. She was on medical leave from approximately October 22, 2003 through April 5, 2004. Rutherford was released to return to work to light duty and she required the use of a motorized scooter. Wackenhut assigned her sedentary work such as preparing brochures indoors at the program headquarters. After about a month of office work, Rutherford returned to her normal outdoor duties as an ambassador. She needed to use a cane and a wrist brace.

¶ 5. On June 9, 2004, at Wackenhut's request, Dr. Stephen Barron conducted an independent medical exam (IME) in connection with Rutherford's worker's compensation claim. On June 30, 2004, Rutherford met with Andrea Morrise, the PSA Director, and Mark Schaefer, Wackenhut Area Manager, to discuss the IME report. Schaefer informed Rutherford that the IME report concluded that Rutherford had no physical or medical restrictions, that she was fully capable of performing all duties required in her position, and that it was no longer necessary for Rutherford to wear a wrist

brace or use a cane. Consequently, Rutherford was instructed that she would not be allowed to wear a wrist brace or use a cane during work time. Rutherford objected.[2] Schaefer gave Rutherford until July 6, 2004, to obtain another medical opinion stating that it was necessary for her to use a wrist brace and a cane; otherwise, she would be required to work without the wrist brace and cane.

¶ 6. On July 6, 2004, Rutherford again met with Schaefer and Morrise. Rutherford did not have a formal report, but insisted that she needed the wrist brace and the cane, and that her doctor had ordered her to use them until her next appointment, which was in approximately one week. Rutherford had her doctor's office fax Wackenhut a note, signed by a nurse in his office, verifying that her physician wanted her to use the brace and cane until her next appointment. Despite this notification and corroboration of her doctor's order, Wackenhut refused to employ Rutherford until she worked without a cane or a wrist brace, or until her physician cleared her of all physical or medical restrictions. Rutherford refused to violate her doctor's orders. Wackenhut terminated her.

¶ 7. Rutherford filed a Wisconsin Fair Employment Act (WFEA) disability discrimination complaint with the ERD[3] alleging that: Wackenhut unlawfully

---

[2] This instruction by her work supervisors is in conflict with Rutherford's doctors' release orders. Dr. Patrick Cummings, the physician treating Rutherford's ankle injury, had a two-month restriction from May 18, 2004 through July 18, 2004 in place. Dr. Lewis Chamoy, the physician treating Rutherford's wrist injury, had, on June 11, 2004, directed Rutherford to wear a wrist brace.

[3] Rutherford also filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC). It appears from the record that both agencies conducted an investi-

discriminated against her because of her disability; Wackenhut refused to reasonably accommodate her disability; and Wackenhut terminated her employment because of her disability.

¶ 8. The ERD found that Rutherford appeared to have suffered from "temporary disabling conditions," and not permanent disabilities, based on the IME report relating to Rutherford's worker's compensation case, which Wackenhut provided to the ERD investigator. The ERD concluded that there was no probable cause to believe Wackenhut had violated the WFEA, noting that although Rutherford disagreed with the IME report, she "presented no medical evidence which dispute[d] the diagnosis."

¶ 9. Rutherford filed a timely appeal with the ERD's Appeal Tribunal which resulted in a hearing before an administrative law judge (ALJ). The ALJ sent letters to the parties prior to the hearing, with information about the upcoming hearing. Rutherford was told by letter that in order to show an actual disability, she would have to present "competent medical evidence," which the ALJ described as usually requiring "that a party produce the testimony of a medical professional qualified to testify about the medical issue or issues in dispute and/or certified medical records that are relevant to the medical issue or issues in dispute."

¶ 10. Prior to the hearing, Rutherford appeared at the ERD office. The ALJ discussed with Rutherford the difficulties she would face in representing herself, as well as the requirement that all medical records must be certified, and not merely copies of medical

gation of Rutherford's allegations. The EEOC issued a finding of no probable cause and provided a right to sue letter to Rutherford. Rutherford then commenced a lawsuit in federal court against Wackenhut.

records. Rutherford informed the ALJ that she could not afford an attorney and asked whether the ERD would provide someone to help her. The ALJ memorialized this *ex parte* meeting in a letter to both parties.[4]

¶ 11.   At the June 14, 2005 hearing, the ALJ asked Rutherford about the chronology of the events leading up to her discharge, including the injuries and medical treatment which led to her claimed disability. Rutherford had copies of medical records with her. Her medical records were in excess of 500 pages. In response to the ALJ's questions, Rutherford attempted to locate documents which supported her answers. The ALJs observation on the record describes the difficulty Rutherford was having managing the documents:

> Let the record reflect that the complainant is looking through all the documents. She not only has documents on the table, across the table, stacked up on the table, but she also has a portable type of suitcase that shes got apparently even has more documents in, so were going to be moving forward.

The ALJ refused to allow Rutherford the time she needed to find the documents. Instead, the ALJ moved on to a new question.

¶ 12.   At the hearing, Rutherford attempted to enter into evidence a number of exhibits which she considered competent medical records. Rutherford told the ALJ that Wackenhut was already in possession of many, if not all, of the documents that she was going to present, because she had provided them to her PSA supervisor in connection with her worker's compensa-

---

[4] The ALJ properly handled this *ex parte* communication according to the provisions of WIS. STAT. § 227.50(2) (2003–04).

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

tion claim as she received the records from her doctors so that Wackenhut could give them to its insurance company. Additionally, Rutherford described her difficulty getting certified copies of medical records because when she requested them, she was informed by the various medical records departments that the records would only be sent to her attorney, whom she had earlier told the ALJ she could not afford. Because the exhibits were not certified copies of medical records, and because Rutherford had not given opposing counsel notice in this case of the specific medical records she was going to present, the ALJ refused to consider most of Rutherford's copies of medical records.

¶ 13.   Rutherford apparently had also made notes on some of her copies of medical records. From the record, it appears the ALJ gave no thought to simply redacting Rutherford's notes, but simply refused to admit any records containing Rutherford's notes. It is unclear from the record whether these annotated pages were part of certified copies that Rutherford had been able to obtain prior to the hearing. At the conclusion of Rutherford's testimony, the ALJ granted Wackenhut's motion to dismiss, indicating a written decision would follow.

¶ 14.   The ALJ decision concluded that Rutherford had not proven the existence of a disability under the statute, but had only proven that she injured herself at work, that she used a cane and a wrist brace, and that she believed she should continue to use them. The decision did not consider whether the proposed and subsequently rejected copies of medical records in fact showed a disability which might have entitled Rutherford to relief, nor did the decision consider Rutherford's representation that Wackenhut in fact already had all

the records to which she wished to refer, although they had not been produced a second time in connection with the ALJ hearing.

¶ 15.  The worker's compensation claim records are a part of the record before us because Rutherford sent them to the Commission with her appeal of the ALJ decision. Rutherford's worker's compensation attorney was able to obtain certified copies of her medical records from Dr. Patrick Cummings, who treated Rutherford for her ankle injuries. The certified copies include Dr. Cummings' determination that Rutherford suffered a permanent partial disability relating to her ankle.

¶ 16.  The Commission affirmed the ALJ's decision, holding that its review was limited to the evidence in the record before the ALJ, and that although Rutherford had provided certified copies of her medical records with her appeal submission to the Commission, the certified copies were not part of the hearing record. Consequently, the Commission did not consider the certified copies. Rutherford was obviously unaware of WIS. STAT. § 227.49[5] which allows petitions for rehearing based on "[t]he discovery of new evidence suffi-

---

[5] WISCONSIN STAT. § 227.49, Petitions for rehearing in contested cases, states in pertinent part:

(1) A petition for rehearing shall not be a prerequisite for appeal or review. Any person aggrieved by a final order may, within 20 days after service of the order, file a written petition for rehearing which shall specify in detail the grounds for the relief sought and supporting authorities. *An agency may order a rehearing on its own motion* within 20 days after service of a final order . . . .

. . . .

(3) Rehearing will be granted only on the basis of:

(a) Some material error of law.

(b) Some material error of fact.

ciently strong to reverse or modify the order, and which could not have been previously discovered by due diligence." An agency can order a rehearing on its own motion for the same reasons. The certified copies of medical records which had eluded Rutherford prior to the ALJ hearing apparently were obtained by her worker's compensation attorney and thus became available to her after the ALJ hearing. The Commission affirmed the ALJ decision based on Rutherford's failure to provide notice of the documents to be used and the lack of any of her medical records in the hearing record.

¶ 17. Rutherford appealed to the circuit court, which affirmed the Commission's decision. This appeal followed.

## STANDARD OF REVIEW

¶ 18. The scope of appellate review of an agency decision is identical to that given by statute to the circuit court. *Gilbert v. Medical Examining Bd.*, 119 Wis. 2d 168, 194–95, 349 N.W.2d 68 (1984). We review the agency's decision, not that of the trial court. *Motola v. LIRC*, 219 Wis. 2d 588, 597, 580 N.W.2d 297 (1998). The scope of judicial review of an agency decision is found in specific statutory provisions. WISCONSIN STAT. § 227.57(4) provides, in pertinent part:

> The court *shall remand* the case to the agency for further action *if it finds* that either *the fairness of the proceedings* or the correctness of the action *has been*

---

(c) The discovery of new evidence sufficiently strong to reverse or modify the order, and which could not have been previously discovered by due diligence.

(Emphasis added.)

*impaired by* a material error in procedure or *a failure to follow prescribed procedure.*

(Emphasis added.) Section 227.57(5) describes our ability to remand for further action under a correct interpretation of the law, and states in pertinent part:

> The court *shall* set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall *remand the case to the agency for further action under a correct interpretation of the provision of law.*

(Emphasis added.) In addition, § 227.57(8), in pertinent part, instructs that:

> The court *shall* reverse or *remand the case to the agency if* it finds that *the agency's exercise of discretion is* outside the range of discretion delegated to the agency by law; is inconsistent with an agency rule, an officially stated agency policy or a prior agency practice, if deviation therefrom is not explained to the satisfaction of the court by the agency; or is otherwise *in violation of a constitutional or statutory provision;* but the court shall not substitute its judgment for that of the agency on an issue of discretion.

(Emphasis added.)

¶ 19. We have "characterized 'may' as permissive and 'shall' as mandatory unless a different construction is required by the statute to carry out the clear intent of the legislature." *Forest County v. Goode*, 219 Wis. 2d 654, 663, 579 N.W.2d 715 (1998) (citation omitted). The applicable statutes and rules, by the use of the permissive "may," give discretion to the ALJ. In addition, when a statute or rule identifies specific circumstances under

509

which its presumptive outcome may be avoided, discretion must be exercised under the plain language of the statute or rule.

■

¶ 20. The usual deference accorded an administrative agency's interpretations of statutes or administrative rules is well known and need not be discussed here.[6] A decision which requires an exercise of discretion, and which on its face demonstrates no consideration of any of the factors on which the decision could be properly based, constitutes an erroneous exercise of discretion. *Schmid v. Olsen,* 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983).

## DISCUSSION

### *Certified copies of medical records*

¶ 21. The Wisconsin Administrative Procedure Act, WIS. STAT. ch. 227, governs the conduct of contested administrative hearings. The statute requires very relaxed rules of evidence. Wisconsin Stat. § 227.45, Evidence and official notice, states in pertinent part:

> **(1)** . . . The agency or hearing examiner *shall admit all testimony having reasonable probative value,* but shall exclude immaterial, irrelevant or unduly repetitious testimony or evidence that is inadmissible under s. 901.05. The agency or hearing examiner shall give effect to the rules of privilege recognized by law. Basic *principles of relevancy, materiality and probative*

---

[6] The degrees of deference accorded administrative interpretations of statutes and conclusions of law are "great weight deference," "due deference" and *de novo* review, or no deference. *DILHR v. LIRC,* 155 Wis. 2d 256, 262, 456 N.W.2d 162 (Ct. App. 1990).

*force shall govern the proof of all questions of fact.* Objections to evidentiary offers and offers of proof of evidence not admitted may be made and shall be noted in the record.

(Emphasis added.) Specifically, the ALJ "shall not be bound by common law or statutory rules of evidence." Sec. 227.45(1). The ALJ is directed to admit evidence of "reasonable probative value" and is specifically required to exclude only evidence that is "immaterial, irrelevant or unduly repetitious testimony" or evidence that is inadmissible under a statute relating to HIV testing.

**[6]**

¶ 22. A similar relaxation of the statutory rules of evidence is required as to documents. WISCONSIN STAT. § 227.45(5) recognizes and adapts to the problems of producing original documents. Consistent with the very relaxed rules of evidence, § 227.45(5) directs that: "Documentary evidence may be received in the form of copies or excerpts, if the original is not readily available. Upon request, parties shall be given an opportunity to compare the copy with the original." Section 227.45(5) does not require certified copies of medical records. Nor do the DWD administrative rules relating to hearings require certified copies of medical records. *See* WIS. ADMIN. CODE §§ DWD 218.01–218.25.

■

¶ 23. An agency tribunal can consider competing medical opinions and assess the weight and credibility associated with those opinions. *See, e.g., Valadzic v. Briggs & Stratton Corp.*, 92 Wis. 2d 583, 598, 286 N.W.2d 540 (1979). Wackenhut presented its doctor's opinion that Rutherford *did not* have a permanent disability in the form of a written report; it had no live medical witnesses. However, Rutherford was never per-

mitted to introduce her treating doctor's opinion that she *did* have a permanent disability because the opinion was in his treatment records and she had not been able to get the certified copies the ALJ required before the hearing.

¶ 24. The only evidence of a "requirement" for certified copies of medical records comes from the ALJ's letters to Rutherford. In spite of the statutory mandate not to be limited by either statutory or common law rules of evidence, and in spite of the lack of any DWD rule in the Administrative Code requiring submission of certified copies of medical records, the ALJ imposed that requirement here. The ALJ imposed a requirement beyond what is found in either the applicable statutes or administrative rules. Only the ALJ-imposed requirement resulted in the ALJ refusing to consider the 500 pages of copies of Rutherford's medical records. In excluding the uncertified copies, the ALJ made no analysis of the factors governing admissibility of evidence in these hearings which are provided by statute. Consequently, the ALJ did not exercise the discretion authorized and as such acted beyond the authority given by the legislature.

¶ 25. We do not express any view on which of the competing opinions may have been the more credible. That is the task of the ALJ. However, that decision can only be made fairly if, as Wis. Stat. § 227.45 requires, *all* relevant and material evidence is considered and evaluated in view of all of the surrounding facts and circumstances. Here, the ALJ refused to admit or consider documents Rutherford produced which were obviously relevant and material.

### *Notice*

■

¶ 26.   Administrative rules require that the parties' give notice to one another of the evidence and testimony which each party intends to present. WISCONSIN ADMIN. CODE § DWD 218.17 provides that:

> By no later than the tenth day prior to the day of hearing, the parties shall file with the division and serve upon all other parties a written list of the names of witnesses and copies of the exhibits that the parties intend to use at the hearing . . . . The administrative law judge *may* exclude witnesses and exhibits not identified in a timely fashion pursuant to this section.

(Emphasis added.) The rules allow, but do not require, exclusion of witnesses or evidence for violation of the notice rule.

■

¶ 27.   It is not disputed that Rutherford did not, as lawyers do, provide an advance list of witnesses, a separate list of exhibits, and attach copies of each exhibit identified. Recognizing that a *pro se* litigant is not trained in either procedural or substantive law, courts generally provide *pro se* litigants a degree of leeway in complying with the rules expected of lawyers. *See Waushara County v. Graf*, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992).

¶ 28.   Rutherford asserted that she had given Wackenhut copies of her medical records as she received them while she was treating with the various doctors and still working for Wackenhut. There is no evidence that the ALJ considered whether Rutherford's failure to supply new copies of previously supplied medical records prejudiced Wackenhut, or whether the

513

prejudice to her by refusing to consider the records she had previously provided unfairly deprived her of her right to present her claim. The record contains no evidence that the ALJ applied the discretion required by the statutes and administrative rules.

¶ 29.   We conclude that, according to the provisions of WIS. STAT. § 227.57(4), the fairness of the proceedings before the ALJ was impaired by material errors in procedure. The ALJ failed to exercise discretion in applying the relaxed rules of evidence required by WIS. STAT. § 227.45 when the ALJ refused to consider copies of medical records either because they were not certified, or because the copies of records contained notes by Rutherford, without considering whether the notes could have been redacted or ignored. The ALJ did not exercise discretion in applying WIS. ADMIN. CODE § DWD 218.17 when the ALJ did not balance the equities as between the parties before refusing to admit copies of medical records, which had been previously produced by Rutherford to Wackenhut but were not produced a second time in connection with the administrative hearing. The excluded evidence, Rutherford's doctor's opinion that her partial disability was permanent, was both relevant and material to Rutherford's claim. Such evidence, had it been considered, might have resulted in a different conclusion by the ALJ. Consequently, pursuant to § 227.57(5), we remand to the ERD for a new hearing before an ALJ under a correct interpretation of the law, consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

¶ 30.   FINE, J. (*concurring*). I fully join in the Majority's decision, except:   (1) its brief and, in my

view, immaterial discussion of deference courts owe to administrative agencies, Majority, ¶ 20; and (2) its reference to the medical examination done by Wackenhut's physician as an "independent medical exam," Majority, ¶ 5.

¶ 31.   First, in my view, this appeal has nothing to do with the deference we give to administrative determinations; the agency's flaw was in *not* making a proper determination, which is why we are remanding. So I see no reason to discuss or even mention the levels of deference.

¶ 32.   Second, the phrase "independent medical exam" denotes *independence*. Of whom was Stephen Barron, M.D., independent? Certainly not Wackenhut. Indeed, the Majority specifically identifies Barron as "its doctor." Majority, ¶ 23.

¶ 33.   I understand that defendants in cases where medical assessments are at issue refer to examinations done by their physicians as "independent" examinations, and courts frequently follow suit. Those examinations, however, are no more independent than are those performed at the behest of plaintiffs in those cases. A truly "independent medical examination" would be one, for example, done at the behest of a court, under Wis. Stat. Rule 907.06.

¶ 34.   Based on the foregoing, I respectfully concur.