COURT OF APPEALS
DECISION
DATED AND FILED

July 27, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2021AP1001**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019SC2864

**IN COURT OF APPEALS
DISTRICT II**

PJL PROPERTIES, LLC AND PETER J. LONG,

   PLAINTIFFS-APPELLANTS,

 V.

A & BE HEATING AND COOLING, LLC,

   DEFENDANT-RESPONDENT.

APPEAL from orders of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Affirmed*.

¶1       KORNBLUM, J.[1]  This case arises out of a dispute between a property owner, PJL Properties, LLC (PJL), owned by Peter Long (Long)[2] and a company providing service to the property to install a boiler, A & BE Heating and Cooling, LLC (A & BE).  Both Long and A & BE appear pro se.[3]  PJL claims that A & BE improperly conducted the installation, alleging both breach of contract and negligence.  The circuit court held a trial on this matter, at which Long appeared by video technology.  The court held that PJL had not proved its case, and dismissed it.  PJL raises three issues on appeal.  PJL contends that the court erred in finding that PJL failed to meet its burden of proof on the substantive claims of breach of contract and negligence.  PJL also contends that the circuit court erred in not ruling in its favor because A & BE failed to pull a permit prior to

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.  On June 28, 2021, PJL Properties, LLC (PJL) filed a motion for a three-judge panel which was held in abeyance pending briefing in this case.  PJL does not explain why this case should be decided by a three-judge panel instead of a one-judge panel, either in its motion or in its briefing.  Based on our review of the case, we deny the motion for a three-judge panel.

[2] For ease of reading, the plaintiff is referred to either as PJL or by the name of the owner, Long.

[3] A & BE filed a letter in lieu of its Brief of Respondent, which this court accepted as a brief.  Long argues in his reply brief that by failing to file a proper brief, A & BE admitted all of Long's contentions.  "*Pro se* appellants must satisfy all procedural requirements, unless those requirements are waived by the court.  They are bound by the same rules that apply to attorneys on appeal." *Waushara County v. Graf*, 166 Wis. 2d 442, 452, 480 N.W.2d 16 (1992).  In this case, we waived the requirement of filing a formal brief.  We note that we are giving greater latitude to both PJL and A & BE in accord with our general policies.  Pro se litigants are generally granted "a degree of leeway" in recognition of the fact that they are ordinarily unfamiliar with the procedural rules and substantive law that might govern their appeal. *Rutherford v. LIRC*, 2008 WI App 66, ¶27, 309 Wis. 2d 498, 752 N.W.2d 897.  Thus, for example, while we construe pro se petitions, motions, and briefs to make the most intelligible argument we can discern, we do not impute to pro se litigants the best argument they could have but did not make.  *See id.*

installing the boiler. Finally, PJL contends that the court erred in failing to grant its request for continuance. We disagree and affirm.

## Background

¶2      Long is the owner of PJL, which owns rental properties in Neenah, Wisconsin. One of the properties, a duplex located at 322-324 East Doty Avenue, is the subject of this appeal. PJL filed suit against A & BE for alleged negligence in the manner in which A & BE replaced a boiler in the upper unit of the duplex (322), which he alleges resulted in harm a few months later to the heating system of the lower unit (324). PJL's factual allegations in the complaint are:

> Defendant was negligent and breached the HVAC installation contract by not connecting the jumper pipes between the 322 E. Doty Ave. Neenah ("322") heating boiler to the existing 324 E. Doty Ave., Neenah ("324") heating boiler. The Defendant was also negligent for not returning the Plaintiff's calls for service and not servicing the boiler when the 324 boiler failed in January 2018. Due to the Defendant's negligence the 324 boiler heating pipes froze and ruptured causing a significant amount of damage. The cost to repair said damages was $3,600.00 by S & A Heating & Cooling, LLC. (See attached estimate).

A.      *Alleged Negligence in Boiler Installation*

¶3      At trial, PJL focused on A & BE's failure to attach the crossover or "jumper" pipes from the boiler it replaced.[4] The purpose of these pipes was to serve as an emergency bypass if one of the boilers in the duplex failed, to allow the other boiler to service both units.

---

[4] These pipes are referred to as "crossover" pipes and "jumper" pipes throughout the record. Long presented exhibits consisting of photographs of examples of these crossover pipes, although neither the testimony nor the exhibits clearly show that these photographs represent the system in the 322-324 unit.

3

¶4      The circuit court held a trial on this matter on April 21, 2021. Long testified on behalf of PJL. According to Long's testimony, the duplex had two boilers, one for the upper unit and one for the lower. The two boilers were connected by "jumper" pipes in case the boiler were to go out for one of the units. In October 2018, the boiler for the upper unit (322) failed. Long was incarcerated at the time, and contacted A & BE by phone from the jail to arrange for A & BE to replace the boiler. Long approved A & BE installing a new boiler on October 24. In essence, this was a verbal contract. The day after the installation, Long spoke with A & BE and A & BE confirmed that "everything went all right."

¶5      Several months later, in January 2019, the lower unit's tenant complained to Long that the lower boiler had failed. When Long could not get A & BE to fix the lower unit (324), due to A & BE being too busy, Long directed the tenant to open the jumper pipes. The tenant informed Long that the jumper pipes had been cut and were not connected to the boiler A & BE had installed for the upper unit. The record has no information as to why Long did not discover that the jumper pipes had been cut from the time of the installation of the boiler in the upper unit in October 2018 until January 2019. Long testified that he never gave A & BE permission to cut the "jumper" pipes. He testified that had A & BE asked him, he would have said, "No." "I just asked them to install a replacement boiler, hook it up to the pipes that are there. Nobody gave my permission to hack off my pipes…." Long called a different contractor to check the system on January 31, 2019, who determined that the lower boiler was not providing heat and that pipes to the lower unit had frozen. Long testified that "the entire system froze, the pipes burst, [and] the radiator burst."

4

¶6      Long testified that he obtained an estimate for the cost of repair for $3,600.[5]  Instead of repairing the boiler system, Long decided to replace the heating system with a forced air heating system.  The new forced air system cost $8,500; Long's "insurance paid a couple grand, [and] the rest was out of [his] pocket."  He is suing to recover those out of pocket costs.

¶7      Long testified at length about why he believed that jumper pipes were important, that he had other boilers installed in other properties, and the contractors did not cut the jumper pipes.  On cross-examination, Long admitted that he could not show where having the crossover or jumper pipes was a building code requirement.  He stated, "I can have them if I want them, it's up to me."

¶8      Edgar Gonzalez testified on behalf of A & BE.  Gonzalez testified that A & BE had been doing work for Long for a couple of years on various rental units.  Because they were unable to repair the boiler in the lower unit in October 2018, they discussed replacing it with Long.  Gonzalez agreed that A & BE had a verbal contract with PJL to replace the boiler for approximately $5,200.  A & BE did complete the boiler replacement without the jumper pipes. He testified that code does not require jumper pipes.  Gonzalez removed the jumper pipes because that is how he installs boilers.  A & BE does not install jumper pipes when it installs boilers, for several reasons.  According to Gonzalez, engineers will "never" design a system with jumper pipes because "one boiler will not be able to handle the whole building."  This also creates a problem with gas metering for tenants, because after the jumper pipe is opened, then the entire

_____

[5] The estimate is dated April 18, 2019.  Again, the record does not show why the estimate for repair is nearly four months after the discovery of the problem.

building runs on one meter. When the tenants complain about the bill, they "go after the heating and cooling company just because we install the jumper pipe." At trial, Long tried to get Gonzalez to agree that if he had not cut the jumper pipes, the remaining pipes would not have frozen. Gonzalez did not agree. He testified that the boiler that remained functional "wouldn't be able to handle the load."

¶9 Sometime after A & BE installed the boiler for the upper unit, Gonzalez learned that the boiler for the lower unit had broken down. A & BE was not able to go out to repair it due to the volume of calls they were receiving. Gonzalez knew from another contractor that the pipes were freezing, and because Long was incarcerated, Gonzalez told Long's father to "get somebody there right away." Gonzalez did not hear anything further until a few months later when PJL's insurance company called him, asking about damages in the home. Gonzalez learned from the insurance company that the insurance had paid for all the repairs and clean up due to the upper unit boiler breaking down, as well as heaters and the excess electricity. Gonzalez also learned that Long had put in a forced-air system, and wanted A & BE to "pick up the tab" for what he spent out of pocket for the forced-air system.

¶10 The circuit court concluded that PJL had not met its burden of proof and dismissed the case. The court found that the parties had an oral contract to replace a boiler, which was satisfied because the boiler was replaced. Regarding the cross-over tubes or jumper pipes, the court considered the testimony of the parties as to whether this was code or not code. The court concluded that the jumper piping was not required, but also not disallowed. A & BE had some discretion about how to install the boiler, which they did. The court found that the parties did not discuss the jumper system and that it was not essential to the contract for replacing the boiler. Regarding damages for not installing the jumper

system, the court denied damages, stating that installing the jumper system was not a "necessary part" of A & BE's "duties or responsibilities."

## B.     *Failure to Pull a Permit*

¶11     Long testified that he told A & BE to make sure they "pull[ed] the permits" when he was discussing the contract with them.  He found out that A & BE did not pull a permit to install the boiler, and when they did pull a permit nearly two years later, they had code violations which cost $363.56 to repair.

¶12     Gonzalez testified that due to an error on A & BE's part, A & BE had failed to pull a permit prior to installation.  They did not discover the error until much later, and after this discovery, he pulled the permit.  A & BE was not informed about any code violations after inspection, and Long did not give A & BE the opportunity to fix any code violations after inspection.

¶13     Regarding the failure to pull a permit, the court ruled that A & BE would need to resolve that with the municipality.

## C.     *Request for Continuance*

¶14     Long initiated this lawsuit on September 12, 2019.  The court trial in this case took place on April 21, 2021.  Between the filing of the summons and

complaint and the court trial, Long requested and received four adjournments.[6] The fourth request for adjournment was based in part on Long's desire to not be placed in isolation for fourteen days as a COVID-19 precaution upon returning to jail after appearing in court. In a written order, the circuit court denied Long's fourth motion for adjournment and granted permission for Long to appear by video from jail "if he so chooses." The court apparently granted the request for adjournment subsequently, rescheduling the trial for April 21, 2021.

¶15     Long then filed a fifth motion for continuance. In that motion, he stated that he had COVID-19, could not appear by video, and requested rescheduling. He also filed "supplemental" reasons to reschedule, requesting 30-60 days to file an amendment to his complaint to add the costs of fixing the code violations. The court did not rule on this motion prior to the April 21 trial. At the trial, Long appeared by video conferencing while the court and A & BE were present in person. Long continued to press for an adjournment, arguing that he needed time to amend his complaint to add damages for correcting code violations, and for A & BE failing to pull a permit for the installation of the boiler at the time of installation. He also wanted to testify personally so he could present the CD of the phone calls between himself and A & BE regarding the verbal

_____

[6] Long requested and received two adjournments to obtain discovery of a CD of phone calls between himself and A & BE relating to establishing an oral contract to replace a boiler. A third adjournment was requested to allow time to obtain additional evidence regarding the code status of the jumper pipes, to coordinate the testimony of another HVAC firm who has worked on the three duplexes, and because Long was incarcerated at the time and expected to be out within sixty days, to allow him to present evidence in person via his laptop of the recorded conversations between himself and A & BE regarding the contract. The fourth request for adjournment was based on Long's incarcerated status and his desire not to appear in handcuffs and shackles, as well as to avoid a mandatory fourteen-day COVID-19 quarantine upon returning to confinement from court. He also wanted to amend his complaint to add information regarding A & BE's failure to obtain a permit prior to starting its work.

contract. He needed his laptop to play the calls on the CD, neither of which he had in jail. He also argued that the court holding the hearing via Zoom[7] over Long's objection violated the Wisconsin Supreme Court's Order dated April 15, 2020, relating to video hearing during the COVID-19 pandemic.

¶16 The circuit court denied this fifth motion for continuance. The court pointed out that the case, at that point, was 588 days old, and that Long had already received multiple adjournments in response to requests made on short notice. The court had reserved time on the calendar for the hearing, arranged for Long to appear by video, noted that Long was "well past" the time to amend the summons and complaint, stated that "it sounds like you're just wanting to delay the matter more and more."

## Discussion

### A. Standard of Review

¶17 We review whether evidence is sufficient to support the verdict by examining whether "there is any credible evidence to support the verdict." *Hoffman v. Wisconsin Elec. Power Co.*, 2003 WI 64, ¶9, 262 Wis. 2d 264, 664 N.W.2d 55. Our duty is to "search the trial record for credible evidence to sustain the jury's verdict, not for evidence to sustain a verdict that the jury could have reached but did not." *Trinity Lutheran Church v. Dorschner Excavating, Inc.*, 2006 WI App 22, ¶31, 289 Wis. 2d 252, 271, 710 N.W.2d 680. When a case is

---

[7] Zoom is a web conferencing platform that is used for audio and/or video conferencing. Dave Johnson, *What is Zoom and How Does it Work?* (Feb. 11, 2021), https://www.lifewire.com/what-is-zoom-and-how-does-it-work-4800476 (last visited July 14, 2022).

tried to a court, our review is similarly weighted toward sustaining the court's findings of fact. *Amoco Oil Co. v. Capitol Indem. Corp.*, 95 Wis. 2d 530, 542, 291 N.W.2d 883 (Ct. App. 1980). Those findings of fact will not be upset on appeal unless contrary "to the great weight and clear preponderance of the evidence." *Clintonville Cmty. Hosp. Ass'n v. City of Clintonville*, 87 Wis. 2d 635, 639, 275 N.W.2d 655 (1979).

¶18 Though we defer to the circuit court's findings of fact, we review a circuit court's decision regarding whether the facts establish negligence or negligence per se "independently, without deference to the trial court's decision." *Taft v. Derricks*, 2000 WI App 103, ¶10, 235 Wis. 2d 22, 613 N.W.2d 190; *Ladewig ex rel. Grishke v. Tremmel*, 2011 WI App 111, ¶¶9-10, 336 Wis. 2d 216, 802 N.W.2d 216.

¶19 We review a circuit court's decision to grant or deny a continuance for erroneous exercise of discretion. *Rechsteiner v. Hazelden*, 2008 WI 97, ¶28, 313 Wis. 2d 542, 753 N.W.2d 496. "We will not reverse a circuit court's denial of discretionary relief if our review of the record shows that the circuit court in fact exercised discretion and there is a reasonable basis for its decision." *L.M.S. v. Atkinson*, 2006 WI App 116, ¶18, 294 Wis. 2d 553, 718 N.W.2d 118. This court will sustain a circuit court's discretionary decision when that decision was "the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *LaRocque v. LaRocque*, 139 Wis. 2d 23, 27, 406 N.W.2d 736 (1987) (citation omitted).

B. *Sufficiency of the Evidence—Breach of Contract and Negligence*

¶20 Long argues that the evidence was insufficient to support the circuit court's verdict that he had failed to meet the burden of proof. Based on our review of the record, we find ample evidence to support the court's verdict.

¶21 Long argued that A & BE breached the installation contract for the new boiler in the upper unit by not attaching the jumper pipes, and in fact committed "professional malpractice" in doing so. No factual dispute exists as to whether A & BE and Long had a verbal contract to replace the boiler. The circuit court found as a fact that a verbal contract existed. The court found that the boiler was replaced, which Long does not dispute. The court found that the contract did not include "installing the jumper system" because the jumper pipes were never discussed. The evidence supports this finding. Although Long testified initially that he "asked them to install a replacement boiler, hook it up to the pipes that are there," he later acknowledged that (1) the jumper pipes are ***not*** part of the boiler system and (2) he and Gonzalez only discussed replacing the boiler and he "didn't ask for anything else to be done." We will not disturb the circuit court's finding that connecting the new boiler to the jumper pipes was not within the scope of the parties' contract because it is not contrary to the great weight and clear preponderance of the evidence. ***Clintonville Cmty. Hosp. Ass'n***, 87 Wis. 2d at 639.

¶22 The circuit court referred to testimony about whether any code required jumper pipes. It concluded that "[i]t sounds like it's not required but not disallowed either." The evidence supports this conclusion, as both parties testified that jumper pipes were not required by any code. In addition, Gonzalez testified at length about why A & BE's standard practice is not to install jumper pipes.

Because jumper pipes were not required for installing a boiler, and because A & BE had some discretion in how to install boilers, the court found no breach of contract in installing the boiler without jumper pipes. We see no basis to disturb the circuit court's determination.

¶23     In addition to his breach of contract claim, Long argues that A & BE was negligent, and in fact committed professional malpractice, by disconnecting and failing to reconnect the jumper pipes to the new boiler. We first discuss Long's argument that A & BE committed ordinary negligence. To prove negligence, PJL would need to prove (1) a duty of care on the part of the A & BE; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Antwaun A. ex rel. Muwonge v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 55, 596 N.W.2d 456 (1999). We interpret Long's argument regarding ordinary negligence to state that A & BE owed a duty to PJL to install the new boiler in exactly the same manner that the old boiler had previously been installed—i.e., connected to the existing jumper pipes. Based on the record, we hold that the circuit court did not err in not awarding damages based on negligence. The court already had determined that A & BE had not breached the contract by installing the boiler without the jumper pipes. The record contains no evidence that the standard of care for installing a new boiler required connecting it to jumper pipes. The circuit court appropriately looked to the building codes to determine a standard of care for installation of boilers. The court relied more on the testimony of Gonzalez, an experienced HVAC contractor, than on that of Long, a property owner. Determinations of credibility and how to resolve conflicts in testimony are for the trier of fact. *State v. Poellinger*, 153 Wis. 2d 493, 503, 451 N.W.2d 752 (1990). When a case is tried to the court, the court is the trier of fact. WIS. STAT. § 805.17; *Gauthier v. State*,

12

28 Wis. 2d 412, 416, 137 N.W.2d 101 (1965). We will only substitute our judgment about credibility if the evidence at trial is "inherently or patently incredible." *Id.* In this case, the evidence was not inherently or patently incredible. Because the parties did not discuss the jumper pipes, and no code required the jumper pipes, and no evidence in the record other than Long's opinion supported a duty to connect the new boiler to the jumper pipes, the circuit court did not err in determining that A & BE was not negligent in failing to do so. A & BE had no duty to connect the jumper pipes or refrain from disconnecting them when removing the old boiler.[8]

¶24 Long further argues that this was not a case of ordinary negligence, but professional malpractice. To prove professional malpractice, Long would have had to present more than just his opinion that the jumper pipes were so important that disconnecting them, or failing to connect them to the new boiler, constituted malpractice. The general rule is that expert testimony is required to "satisfy this standard of care as to those matters which fall outside the area of common knowledge and lay comprehension." *Racine County v. Oracular Milwaukee, Inc.*, 2009 WI App 58, ¶40, 317 Wis. 2d 790, 767 N.W.2d 280 (citation omitted), *aff'd on other grounds*, 2010 WI 25, 323 Wis. 2d 682, 781

---

[8] Had the circuit court found a duty of care, it would have had to consider whether A & BE's failure to connect the jumper pipes was causally related to the damages sustained to the lower unit, and whether PJL was contributorily negligent. The record shows that neither Long nor a representative inspected the boiler's installation after it was installed in October 2018. From Long's exhibits, the evidence that the jumper pipes were cut was obvious. The first Long heard of the jumper pipes being cut was when a tenant complained in January 2019 about lack of heat. In addition, A & BE argued that Long delayed for several days in calling them to report the boiler failure in the lower unit in January 2019. These delays might be important in assessing causation and damages.

N.W.2d 88. The proper methods and requirements for installing a boiler are outside of lay experience.

¶25 Long did not present any expert testimony about boiler installation or jumper pipes. The only evidence he presented was his own testimony and exhibits. His lay opinion that A & BE committed professional malpractice by cutting the jumper pipes and failing to reconnect them to the new boiler is insufficient as a matter of law.

¶26 In conclusion, the evidence supports the circuit court's verdict on both PJL's breach of contract and ordinary negligence claims.

C.    *Failure to Obtain a Permit—Negligence per se*

¶27 Long argues that A & BE's failure to pull a permit prior to installing the boiler was a critical error that required the court to rule in PJL's favor. Both Long and A & BE agreed that A & BE should have pulled a permit to install the boiler prior to its installation. We interpret Long's argument as a negligence per se argument: because A & BE failed to follow the administrative rules in starting work without a permit, A & BE was negligent as a matter of law. The circuit court did not find that the failure to pull a permit required a finding of negligence, but stated that A & BE might have to address that with the relevant municipality.

¶28 Our courts have established a framework for "analyzing whether a given statutory rule violation provides a basis for imposing civil liability." *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2006 WI App 109, ¶23, 293 Wis. 2d 668, 721 N.W.2d 127, *aff'd* 2008 WI 22, 308 Wis. 2d 103, 746 N.W.2d 762. In this

14

case, Long identifies the relevant rule as WIS. ADMIN. CODE § ATCP 110.03 (Mar. 2014).[9] A violation of a statute, or rule, does not automatically impose civil liability. *Antwaun A.*, 228 Wis. 2d at 66-67. We will only find negligence per se if we can answer all of the following questions affirmatively: (1) Was the harm inflicted the type the statute was designed to prevent? (2) Was the person injured within the class of persons sought to be protected? (3) Is there some expression of legislative intent that the statute become a basis for the imposition of civil liability? *Id.*

¶29 Because we answer the first question negatively in this case, we hold as a matter of law that A & BE was not negligent per se. The harm which was allegedly inflicted in this case, failing to connect the new boiler to the jumper pipes, was not the type of harm that this code provision was designed to prevent.

---

[9] WISCONSIN ADMIN. CODE § ATCP 110.03 addresses building permits and states as follows:

> **(1)** Before a buyer enters into a home improvement contract, the seller shall inform the buyer of all building or construction permits that are required for the home improvement. Except as provided in sub. (4), no seller may start work under a home improvement contract until all required state and local permits have been issued.
>
> **(2)** Where midpoint or final inspections are required under state laws or local ordinances, copies of inspection certificates shall be furnished to the buyer when construction is completed and before final payment is due or the signing of a completion slip is requested of the buyer.
>
> **(3)** Pursuant to sub. (2), if the state or local inspector who completed the inspection does not issue an inspection document, the seller may provide a summary of the inspection to the buyer. The summary shall include the inspector's name, the date of the inspection, and inspection number or some other way to identify the inspection in the state or local building inspection database.
>
> **(4)** Notwithstanding sub. (1), if the home improvement contract includes subprojects, no seller may start work on any subproject of a home improvement contract that requires state or local permits until all permits required for that subproject have been issued.

Pulling a building permit would not have remedied the jumper pipe issue because the building code did not require jumper pipes, as discussed above. Even after the permit was pulled and the City of Neenah's building inspector conducted an inspection, the lack of connection to the jumper pipes was not identified as a code violation.

¶30    Because this case fails the first factor, we do not consider the second and third factors. *See Antwaun A.*, 228 Wis. 2d at 69 n.12.

### D.    *Denial of Motion for Continuance*

¶31    Long argues that the circuit court erred in failing to grant his last motion for continuance of the trial on April 21, 2021. He objected to holding the hearing for several reasons, as noted above. The Wisconsin Supreme Court has established five factors a court must balance in determining whether to grant a continuance. These include:

> (1) the length of the delay requested; (2) whether the lead counsel has associates prepared to act in his absence; (3) whether other continuances had been requested and received; (4) the convenience or inconvenience to the parties, witnesses, and the court; and (5) whether the delay seems to be for legitimate reasons.

*Rechsteiner*, 313 Wis. 2d 542, ¶93 (citation omitted).

¶32    Based on our review of the record, we conclude that the circuit court did not erroneously exercise its discretion in denying Long's motion. The court discussed the four relevant factors.[10] The court noted that the case already was 588 days old. Long had previously been granted four adjournments. He was

---

[10] Long appeared pro se so the factor relating to an attorney does not apply.

requesting a delay of 30-60 days, when he previously had numerous delays to accomplish similar purposes. Viewing the record, the court did not believe that the delay was for legitimate reasons. The court stated that it thought Long just wanted to continue to delay the case. The court had set aside time to hear the case several times previously, and was not going to do so again. In addition, Long was well past the point where he could amend his summons and complaint. Our review of the record reveals that even though Long had not mentioned A & BE's failure to pull a permit and the resulting damages, the court took testimony on this issue and allowed Long to present evidence on it. Thus, Long was not prejudiced. Long also was not prejudiced by not being able to play the CD of the phone conversations which were important to prove that a contract existed. As noted above, A & BE agreed that a contract existed.

¶33 Long further argues that the circuit court's failure to grant a continuance in light of his desire to personally appear violated the Wisconsin Supreme Court's order dated April 15, 2020, (April 15 order) concerning the conduct of remote hearings during the COVID-19 pandemic.[11] The April 15 order suspended in-person appearances due to the COVID-19 pandemic.[12] However,

---

[11] *In re the Matter of Remote Hearings During the COVID-19 Pandemic* (issued Mar. 22, 2020, amended Apr. 15, 2020), https://www.wicourts.gov/news/docs/remotehearingsam ended.pdf (last visited July 14, 2022). Long does not supply a copy of the Supreme Court order to which he refers, nor is it part of the record, but we understand him to be referring to the April 15 order.

[12] COVID or COVID-19 refers to "Coronavirus disease (COVID-19) [which] is an infectious disease caused by the SARS-CoV-2 virus." *Coronavirus*, WORLD HEALTH ORG., https://www.who.int/health-topics/coronavirus#tab=tab_1 (last visited July 14, 2022). According to the Wisconsin Department of Health Services, "COVID-19 is a communicable, respiratory disease that can cause severe illness in some people. COVID-19 is easily spread from person to person through respiratory droplets and aerosol particles released by people with COVID-19 during coughing, sneezing, singing, talking, and breathing. Since 2019, the spread of COVID-19 has had a devastating impact around the world and across our state." *COVID-19 (Coronavirus*

(continued)

17

that order did not apply at the time of Long's trial. The Supreme Court issued a subsequent order on May 22, 2020, (May 22 order) superseding the April 15 order.[13] The May 22 order extended the April 15 order until each circuit court approved an operational plan "for the safe resumption of in-person proceedings," at which time the April 15 order would no longer apply to that circuit court.[14] On October 30, 2020, (October 30 order) the Winnebago County Circuit Court did just that. The court announced that it had adopted a plan for reopening, effective November 2, 2020, stating that all previous orders, including the April 15 order, ceased to apply.[15] Thus, the order to which Long refers was not in place at the time of his trial on April 21, 2021.

¶34    In conclusion, the circuit court did not erroneously exercise discretion in denying the continuance.

## Conclusion

¶35    For the above stated reasons, we affirm the orders of the circuit court.

---

*Disease)*, WIS. DEP'T OF HEALTH SERVS., https://www.dhs.wisconsin.gov/covid-19/index.htm (last visited July 14, 2022).

[13] *In re Matter of Extension of Orders and Interim Orders Concerning Continuation of Jury Trials, Suspension of Statutory Deadlines for Non-Criminal Jury Trials, and Remote Hearings During the COVID-19 Pandemic* (May 22, 2020), https://www.wicourts.gov/news/docs/jurytrials2.pdf (last visited July 14, 2022).

[14] *Id.* at 3-4.

[15] *Order Approving Operational Plan for the Resumption of In Person Proceedings and Jury Trials for Winnebago County* (Oct. 30, 2020), https://www.co.winnebago.wi.us/sites/default/files/uploaded-files/order_approving_operational_plan_for_resumption_of_in_person_proceedings_winnebago_county.pdf (last visited July 14, 2022).

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.